## Prewitt, Sr. v. Wilborn, et al.

(Decided March 28, 1919.)

## Appeal from Wolfe Circuit Court.

1. Appeal and Error—Presumption That Omitted Portions of Record Sustain Judgment.—The presumption that arises from the omission from the records on appeal, of parts of the records of the action, that the omitted portions sustain the judgment, does not arise when the record on appeal shows that the omitted portions were not before the trial court, and were not considered and could not have influenced the decision of that court.

2. Appeal and Error—Writings Intended to be Used as Evidence—Records.—Writings filed for the purpose of being used as evidence in the trial of an action at law do not become a part of the record unless used, or offered to be used as evidence, or unless they are filed with the pleadings as the foundation of the cause of action.

3. Appeal and Error—Reversal—Records.—A judgment will not be reversed unless an error prejudicial to the substantial rights of appellant affirmatively appears from the record and where the error so appears, in spite of any presumption arising from a portion of the record being omitted, the judgment will be reversed.

4. Appeal and Error—Res Judicata.—The general doctrine of res judicata is that a final judgment rendered upon the merits of the case by a court having jurisdiction of the subject matter and the parties, is conclusive of the rights of the parties and their privies in another suit on the points and matters in issue in the first suit.

5. Judgment—Effect of Judgment in Former and Subsequent Suit.—There is a distinction between the effect of a judgment in a former suit between the same parties in a subsequent suit, upon the same cause of action, and a second suit between the same parties upon a different cause of action from the one in the first suit. In the first instance the judgment in the first suit is a complete bar to the second action, not only as to everything which was used in the first action to sustain or defeat the demand, but everything which the parties could have properly used for that purpose; but in the second instance the judgment is an estoppel to a relitigation of the questions which were actually litigated and determined in the first action, and of such facts as the court necessarily determined in arriving at its decision.

6. Trial—Rule to Determine Whether Two Suits Involve Same Cause of Action.—The accepted rule in determining whether two suits involve the same cause of action is whether the same evidence will sustain or defeat the cause of action in both the suits.

7. Deeds—Exception.—An exception in a deed is that the grantor retains and does not part with the title to a certain portion of the land contained within the description of the property otherwise conveyed by the deed.

8. Deeds—Exception.—The property excepted. in a deed for real estate must be described with sufficient certainty to enable one to locate it, and the maxim, "That is certain which can be made certain" applies to the property excepted.

9. Deeds—Exception—Identification of Property.—Where the language of an exception in a deed sufficiently identifies the property which is excepted from the operation of the deed that it can be designated and located by parol evidence when applied to the description of it in the exception, it is sufficiently certain to make the exception valid.

10. Depositions—Admissibility in Evidence.—Depositions given in an action may, when otherwise competent, be used in a subsequent action between the same parties or their privies, if filed before the commencement of the trial.

11. Ejectment—Judgment in Action of—When Does Not Bind Landlord.—A judgment in an action of ejectment by a claimant of land against a tenant in possession, does not bind the landlord, unless he was made a party to the suit, or unless he made himself a party by defending the action for the tenant, or in assisting or directing the defense of the action, and if the judgment does not bind the landlord it will not affect the right of the other in a subsequent litigation with the landlord.

12. Ejectment—When Not Bar to Subsequent Action.—A judgment in an action of ejectment denying one a right of recovery, upon the title to the land he then claims under, is not a bar to a subsequent action by the same claimant upon a title acquired by him since the judgment in the former suit.

S. MONROE NICKELL, H. R. PREWITT, G. C. ALLEN and EDWARD C. O'REAR for appellant.

KELLY KASH and ROBERT H. WINN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The judgment appealed from, was rendered at the June term, 1916, of the circuit court, and the record was thereafter filed in this court, and after the order of submission in this court had been set aside on two occasions, was finally submitted, on May 10, 1918. A motion was made, by the appellees, to strike the bill of exceptions from the record, and this motion was ordered to be passed and to be heard upon the final submission. The grounds of the motion to strike the bill under the circumstances shown by the record, are deemed insufficient, and the motion is therefore overruled.

(b) This action was instituted by the appellants, Clifton Prewitt, et al., whom we will call the plaintiffs, against the appellees, whom we will call the defendants,

on February 29, 1892, and hence, it is a veteran. The answer was filed in August, 1892. It appears, from Goff, etc. v. Wilborn, etc., 15 R. 614, decided January 23, 1894, that a demurrer having been filed to the answer, it was carried back to the petition and sustained, and the petition dismissed, and from the judgment, an appeal was prayed to this court, which resulted in the opinion, *supra,* which reversed the judgment below, and after the cause was remanded to the trial court, on the 28th day of January, 1897, an amended answer and counterclaim was filed. On April 29, 1897, an amended petition was filed. January 21, 1898, a reply was filed. March 4th, 1898, a rejoinder was filed. In 1903, the court dismissed the action, as it appears, for a want of prosecution. A suit was filed under section 518 Civil Code, for a new trial, which was dismissed, and the plaintiffs, again, appealed to this court, and secured a reversal of the judgment, by the opinion of this court, in Goff, etc. v. Wilborn, etc., 25 K. L. R. 1963, on the 9th day of March, 1904. The cause was remanded for a new trial, and on September 21, 1904, the defendants filed a second amended answer and counterclaim. On May 5, 1905, an amended reply was filed by plaintiffs. A trial was had March 5, 1915, which resulted in a judgment for defendants. A new trial was granted to the plaintiffs, by the trial court, on December 29, 1915. On May 30, 1916, an amended reply was filed, and on the same day, the defendant filed a rejoinder, and the pleadings were then completed by an agreement upon the record, that all affirmative allegations in all the pleadings be considered as controverted of record. The pleadings were thus completed twenty-four years after the litigation began.

During the period of the pendency of the action, it has suffered casualties, and the clerk inserted a memorandum, in his transcript, to the effect, that the record books, containing the orders made during the progress of the action, up to May 29, 1913, were burned, when the court house, in Wolfe county, was destroyed by fire, on that date, and had never been supplied, and hence, were not copied into the transcript. On July 26, 1915, the court, apparently, upon its own motion, appointed a commissioner to supply the missing records, and the commissioner never having reported, on the 7th day of March, 1916, the plaintiffs entered a motion to extend the time for the commissioner to hear proof and supply the lost records,

but, this motion never seems to have been acted upon by the court, and the commissioner never did report. On May 31, 1916, an order, by agreement of the parties, was made, which recited, that the parties, then had present, in court, the original records in the cases of J. M. Bacon, etc. v. Wash Miller, etc., and Wash Miller, etc. v. E. C. Chenault, etc., which were records of the Powell common pleas court, and that same could be used, by either party, on the trial of this case, as if they were certified copies of the records of those cases, and that for the purposes of a trial of this case, they should be treated, as if filed in this case. No part of the record of the case of J. M. Bacon, etc. v. Wash Miller, etc., is copied into the transcript or bill of exceptions, except a deposition of S. F. J. Trabue, which was offered to be read, but excluded by the court.

The appellees now insist, that the judgment ought to be affirmed, because the appellant has not brought to this court, the entire record of the case, in as much, as he has not brought the orders in the case, which were burned, nor all of the records of the case of J. M. Bacon, etc. v. Wash Miller, etc. It is a well settled rule, that before a judgment should be reversed, an error, prejudicial to the rights of the appellee, should affirmatively appear from the record, and the necessary result of this rule is, that every presumption is indulged in favor of the correctness of the judgment appealed from. Dixon v. Melton, 137 Ky. 689; Huffaker, etc. v. National Bank, etc., 13 Bush 644. Hence, an appellant, if he would secure a reversal, here, must exhibit a sufficiency of the record, as will show affirmatively, that the decision appealed from, is erroneous, after indulging the presumption, which follows, a showing upon the record presented, that a portion of the record of the case, had been omitted. Where the transcript as made, shows, that a portion of the record of the case is omitted, which must have been before and considered by the court, in arriving at the decision, it will necessarily be presumed, that the omitted portion justified the decision, as where a judgment overruling a demurrer to a pleading is appealed from, and the record shows, that an amendment to the pleading had been filed before the decision, and the amendment is omitted from the transcript, it will be presumed on appeal, that the amendment cured the defect; or, if an appeal is from a decision on a question of fact, and the record shows,

that the evidence or a portion of it has been omitted, it will be presumed, that the omitted portion sustained the judgment; or, if an appeal is prosecuted, because of the failure to give an offered instruction, and the instructions given are omitted from the record, on appeal, it will be presumed, that whatever was correct, in the rejected instruction, was embodied in the instructions, which were given; or, if all the instructions are omitted, the presumption will be, that the instructions were correct; or, if certain ones are omitted, the same presumption will be indulged, in their favor; or, if the pleadings are omitted, the presumption will be indulged that they were sufficient to justify and sustain the judgment; or, if the evidence is omitted, and a peremptory instruction was given, it will be presumed, that the peremptory was proper. There have been many cases determined, by this court, wherein the presumption of the soundness of the judgments of the trial court was indulged, and dealing with many different situations, wherein the presumption has arisen, as will appear from the following cases, which are only a few of those, in which the principle has been declared and adhered to, but they illustrate its reason and extent. Huffaker, etc. v. National Bank, etc., *supra;* Bowman v. Halloway, 14 Bush 426; Bean v. Magnior, 16 K. L. R. 715; McNew v. Williams, 18 K. L. R. 364; Braswell v. Hurley, 149 Ky. 205; Head v. Cherry, 150 Ky. 319; Trosper Coal Co. v. Tway Mining Co., 183 Ky. 354; May v. Emery, 133 Ky. 637; Com. v. Kegar, 1 Duv. 240; Jones' Admr. v. Jones, 22 R. 1280; Dixon v. Wood, 22 R. 1004; Brashears v. Frazer, 19 R. 1259; Rudd v. Monarch, 17 R. 893; Farmers Bank v. Farmers Bank, etc., 147 Ky. 766; Wickliffe v. Farmers Bank, etc., 142 Ky. 35; Moore v. Bishop, 20 R. 1622; Maize v. Bradley, 25 R. 993; Miles v. Miles, 20 R. 182; Johnson v. Postal Telegraph & Cobb Co., 20 R. 1821; Kugler v. Rose, 23 R. 979; Davis v. Bailey, 21 R. 839. The presumption, however, does not arise from the omission of parts of the record, which were not considered by the court, upon the trial, and could not have influenced the decision, and which, if present in the record here, would not be necessary to be considered, to determine the correctness of the decision. Further, even if absence of certain portions of the record, here, appears from the record, yet, if the record filed here, affirmatively shows, that the decision, below, is erroneous, it will be reversed. McMillan v. Stephens, 20 R. 1528. It seems, that the pleadings and

everything necessary to be considered by the court, and in fact everything that was considered, upon the trial, is embodied in the transcript and bill of exceptions. A portion of the pleadings was filed before the destruction of the court house and a portion of them has been filed since. Two trials have been had, since the burning of the court house. Into the first of these, the appellees entered without objection, and into the latter, as the result of which the judgment appealed from was rendered, each of the parties entered, without objection, and with full knowledge of the absence of the records, which were burned. The appellees never sought to have the burned records supplied, and the efforts of appellants, in that direction, ended with a motion for further time for the commissioner to act, made more than a year before the trial and never pressed to a direction by the court. It does not appear, from the record here, nor from any source, that the records of the orders in the case, previous to the burning, could have, in any way, influenced the decision, in the case, or could have been considered, as they were not in existence, at the time of the trial, and the bill of exceptions fails to show, that any reference was made to any of these orders, by either party, or the court, during the trial. This being an action, at law, and the pleadings, which are all in the transcript, state the issues, and show the records of the action of J. M. Bacon, etc. v. Wash Miller. etc., could have been used as evidence, only, and by such use, was the only way, in which it could become a part of the record. Either party was free to use it as evidence, if competent, but, if neither party introduced it as evidence, nor offered to do so, it was not considered by the court, and could not be a part of the record of this case. The bill of exceptions shows, that neither party used or offered to use it as evidence, nor for any purpose, except the appellants offered to read the deposition of Trabue, which was a part of the record of that case, and upon objection by appellees, it was rejected as evidence. The deposition is copied into the bill of exceptions, with the objection and the ruling of the court thereon. In an action, at law, writings filed as exhibits, and which a party intends to rely upon as evidence, do not become a part of the record, unless the record shows, that they were used or offered to be used upon the trial, or, unless they were filed with and relied upon as the foundation of a party's cause of action. Section 128, subsections 1, 2, 3, Civil Code.

The allegations in the answer, that appellees had sued appellants and recovered a judgment for timber trees, cut upon the lands, in 1892, and that in that action, the title to the lands had been adjudicated, in favor of appellees, were denied by the reply, and no evidence was offered, touching such suit, if there was any such, and hence, the record, of that case, did not become a part of the record of this. The record, failing to show, that anything omitted from the transcript or bill of exceptions was considered by the court, upon the trial of the action, or was before the court to be considered, the contention, that this court should presume the judgment to be correct, because the orders, in the case previous to 1913, or the records of the suits referred to are omitted from the transcript, is without merit.

(c)   The plaintiffs, in the action, at the first, were M. C. Goff, James Goff, Elisha Goff, Caswell Prewitt, Washington Miller, and the appellant, Clifton Prewitt. The defendants were, John Wilborn, Elkanah Spencer, Dillard Hall, James Brooks, ————— Brooks, D. W. Chenault, Bettie Chenault and Joel Chenault. Since the institution of the action, all of the plaintiffs have either died, or transferred their interests, in the lands, in controversy, except appellant, Clifton Prewitt, and the action has not been revived in the name of the deceased plaintiffs. Of the defendants, D. W. Chenault and Bettie Chenault, claimed ownership of the lands, in controversy, and their co-defendants, were sued as trespassers upon the lands, and as having acted under the direction of D. W. Chenault, Bettie Chenault, and her husband, Joel Chenault. Before the trial, the Chenaults had all died, but, the action was revived in the name of their executor and devisee. The plaintiffs claimed to be the owners of a tract of land, designated, as the James Townsend lands, and, also, to be in the possession of the lands, and sought to recover damages of the defendants, because of trespasses which they alleged, that the defendants had committed, by cutting and destroying the timber trees growing thereon. The defendants denied the ownership and possession by plaintiffs of a certain portion of the lands, which they described, in their answer, and of this portion, they claimed the ownership and possession, and, further, alleged, that they were the owners of the portion claimed, by adverse possession for the statutory period. They, also, alleged, that in a suit in-

stituted in the Estill circuit court, in 1886, and transferred to the Madison common pleas court, the style of which was Joseph Blackwell and others, against Washington Miller and others, the plaintiffs sought to recover the lands in controversy of the defendants, and issue was joined upon the right and title to the lands between the plaintiffs and defendants, and that in the suit, a judgment was rendered, by which it was adjudged, that the plaintiffs had no title to the lands, and that the title, of defendants, was valid and superior to that of the plaintiffs; and that all the plaintiffs, in the instant case, were plaintiffs in the action in the Madison common pleas court, and that the defendants, in this action, were defendants in that action, and that the judgment, in that action had been affirmed upon appeal, by this court. The judgment was plead as an estoppel to plaintiffs' claim to ownership of the land, and that the title to the land was *res judicata* as to plaintiffs and defendants. The defendants, further, plead, in bar of plaintiffs' action, a judgment of the Powell court of common pleas, which was rendered, in an action, wherein Washington Miller, Elizabeth Maxwell, S. F. J. Trabue and the Haggins heirs were plaintiffs and E. C. Chenault and others were defendants. It was alleged, that in the last named action, the plaintiffs herein, were plaintiffs therein, and the defendant, D. W. Chenault, and Bettie Chenault were defendants therein, and that in that action, the title to the lands, in controversy, was an issue between the plaintiffs and the defendants, and that it was adjudged in that action, that the plaintiffs had no title to the land, but, that defendants were the owners of same, and the judgment was relied upon as an estoppel and bar to plaintiffs' action herein, and as rendering the title to the lands, *res judicata*. The plaintiffs replied, denying the ownership of the lands by defendants, or that the title to same, had been adjudicated between them and defendants, by the judgment of either the Madison common pleas court or the Powell common pleas court, and alleging title in themselves, by adverse possession, and that since the judgment in the Madison court of common pleas, they had acquired title to the lands from the heirs of James Haggins. They, also, denied, that the cutting of the timber trees, complained of in the answer, had been cut by their direction or authority, or that any of the timber trees had been cut by them, or by any agent or employee

of theirs. The above stated affirmative allegations were
denied by a rejoinder. Just preceding the trial, the plain-
tiffs dimissed their action, and the trial was had upon
the counterclaim of defendants, and the issues arising
therefrom. The defendants, appellees, here, thus became
to occupy the position of plaintiffs in an action for tres-
passing upon realty, and the plaintiffs became to occupy
the position of defendants. The title of the appellees to
the land, in controversy, as well as their possession, and
right of possession, being put in issue, the necessity de-
volved upon them, to succeed, in the action, upon the
strength and validity of their own title, and not because
of any want of title in the appellant. The accompany-
ing diagram is necessary to an understanding of the
facts, developed by the evidence. While it is not intend-
ed to be mathematically correct, it will serve to illustrate
the evidence and the issues.

In 1786, the Commonwealth of Virginia, granted to
Terrason & Bros., a patent for twenty thousand acres
of land, which embraced the lands in dispute, and all the
lands in the above diagram. Thereafter, in 1819, the
lands patented to Terrason & Bros. were sold, to satisfy
the taxes due thereon, and were purchased by Jas. Hag-
gins, and, in 1849 or 1850, were conveyed to the heirs of
Haggins, by the registrar of the land office. At the time of
the sale for taxes, they were assessed for taxation, in
the name of one, who was described in the proceedings, as
a successor of Terrason & Bros. Previous to 1850, one
James Townsend, was residing at the place which is in-
dicated upon the diagram, as "James Townsend's
House." He does not appear to have had any title or
color of title to the lands, but, claimed dominion over
six thousand, nine hundred and nineteen acres, which is
represented upon the diagram, by the lines indicated by
the figures 1, 2, 3, 4, 5, 6, 7 and 8. During his lifetime,
which ended, in 1862, he had a small improvement and
enclosure around his house, and certain of his heirs, lived
at the same place, and at other places, within the six
thousand, nine hundred and nineteen acre boundary,
until 1887 or 1888, and the appellant claims title by con-
veyances from certain of the heirs of James Townsend-
and, also, by conveyances from Trabue, attorney in fact,
for the Haggins heirs. About 1884 or 1885, Elizabeth
Maxwell set up a claim to two thousand and eight acres
within the boundaries of the James Townsend tract.

Upon what, she based her claim to all of the two thousand and eight acres, does not appear, but, she claims to have acquired a claim to all or a part of it, from one Wells, for a consideration of five dollars. Upon what Wells based his claim does not appear. Presumably Wells and Maxwell were mere "squatters." The boundary to which Mrs. Maxwell asserted claim, is described by the lines, represented by the letters, A, B, C, D, E, F, c, n, m, l, k, j, i, h, g, f, e, d, c, b, and a.

About 1875, the Spencer house was erected and occupied, for a short time, by one Townsend, who seems to have been a mere intruder, and after he abandoned the house, Spencer took possssion of it and occupied it until his death, and after him, his wife and certain members of his family occupied it until the time of the bringing of this suit. About seventy-five acres around the Spencer house were enclosed and shortly after he began to occupy the house, he seems to have become a tenant of D. W. and Bettie Chenault, but, upon what ground the Chenaults based their claim to the land, does not appear. Charles occupied the house described on the diagram as "Charles House," as a tenant of Wells and Mrs. Maxwell, for several years before the institution of this suit. The timber trees, the cutting of which is complained of, were situated between the lines described by the letters, A to F, and A to E. The line A to E, is said to be a due north line, while the one, A to F, is N. 9 W. and about 625 poles in length. The boundary of land, which the appellees claim to own, is described by the lines, A to F, F to E, E to G, G to H, H to A, while it seems, that the appellant claims to be a joint owner with others, of the entire James Townsend tract,

At the trial, after the evidence had been closed, the court being of the opinion, that the judgment, in the case of Washington Miller, etc. v. E. C. Chenault, etc., tried and decided, in the Powell common pleas court, determined the question of the ownership of the title to the lands, from which the timber trees were cut, as between the appellees and appellant and the persons, who claimed to be joint owners with appellant, and in favor of appellees, and that appellant was now estopped by the judgment to deny the title of appellees, directed the jury peremptorily to find a verdict for appellees, which it did and a judgment was rendered, accordingly, and from the judgment, this appeal is now prosecuted.

(1) After this lengthy statement of the history and facts of the case, which seems to be necessary to render the opinion intelligible, we will consider the question of the propriety of the peremptory instruction given by the court, and objected to at the time by appellant, and this will involve a history of the case of Washington Miller, etc. v. E. C. Chenault, etc., upon the judgment, in which, the court based its ruling, that the title to the land, in controversy, was *res judicata.* On the 18th day of September, 1888, Trabue, as attorney, in fact, for the Haggins heirs, entered into a contract, which was reduced to writing, with Elizabeth Maxwell. The contract was subscribed by both Trabue and Maxwell. This writing recited, that "whereas Elizabeth Maxwell claimed the possession and has her tenants in possession of two thousand and eight acres of land, situated on the south fork of Red river; and whereas S. F. J. Trabue is the agent and attorney in fact of the heirs of said Bacon and Mrs. Barclay, heirs of James Haggins, deceased, who represent the twenty thousand acre survey of Bartholomew Terrason, successor to Terrason & Brother, which survey includes the lands surveyed by Mrs. Maxwell containing two thousand and eight acres, aforesaid; now, it is agreed, between the said Elizabeth Maxwell and the said Trabue agent, aforesaid, that he, Trabue, will invest the said Maxwell with the title of his principals by a deed of conveyance, whereupon the said Maxwell is by a like deed to convey to said Trabue one-fourth interest in said land and also, one-fourth interest to the clients of said Trabue. The said Trabue is to warrant and defend the title to one-fourth of said land and his clients the other one-fourth and Mrs. Maxwell is to make similar conveyance." Thereafter, on July 16, 1891, the heirs of Jas. Haggins, by Trabue, attorney in fact, executed a deed to D. W. and Elizabeth Chenault, the consideration of which was expressed to be "the settlement of all controversy and claims between the parties hereto, as to the land herein conveyed and in further consideration of one dollar, in hand paid, and for assistance and services by the second party in settlement of the claims of the parties of the first part to their lands in the Terrason Bros. patent." The land conveyed by the deed, was described, as the land, shown upon the diagram, as included, by the lines, A to F, F to E, E to G, G to H, and H to A, and further described it as the land to which

the grantees had asserted title and possession in the
suit in the Madison common pleas court, styled Blackwell
v. Washington Miller, etc., and succeeded against the
claims of all parties thereto. Then followed certain ex-
ceptions in the deed, to the conveyance of the body of
land, conveyed as follows. "There is excepted out of
this conveyance seventy-five acres, including the en-
closure occupied by Jackson Adams and the boundary, or
any part lying within the boundary here conveyed, here-
tofore deeded by the party of the first part to William
Townsend or E. Maxwell or sold to her." On the 1st day
of October, 1891, the Haggins heirs, by Trabue, attorney
in fact, and Trabue, in his own right, executed a deed
to Washington Miller, trustee, by which they conveyed
to him a body of the lands, within the Townsend tract,
and, also, an undivided one-half interest, in the Max-
well tract, or the boundary described by the lines
designated by the letters, A, B, C, D, E, F, a, b, c, d, e,
f, g, h, i, j, k, l, m, n, o. Just who were the *cestui que*
*trustents*, in the deed to Miller, as trustee, does not
definitely appear. Thereafter, on November 7, 1891,
Washington Miller, Trabue and Haggins heirs and Eliza-
beth Maxwell instituted the suit, in equity, in the Powell
court of common pleas, against Elizabeth Chenault, and
D. W. Chenault. The plaintiffs alleged, that Haggins
heirs had been the owners of the Townsend tract of land,
and had entered into the contract, above stated, with
Mrs. Maxwell, touching the two thousand and eight acres,
and that she was in possession of same, and that, in ex-
ecuting the deed to the Chenaults, by Trabue, for the
Haggins heirs, it was intended, to convey to the Che-
naults, the boundary of land, described by the lines, A to
H, H to G, G to F, and F to A, but excepting that por-
tion, which lies to the westward, of the line A, B, C, D,
E, and in fact, it was intended to except from the
conveyance, the tract of land held by Mrs. Maxwell
and that they had not in fact sold or deeded to Mrs.
Maxwell, any land, at all, and that such expression
in the deed was a mistake and that it was intended to
except the land, concerning which the contract with Mrs.
Maxwell existed, and the only relief sought by the peti-
tion was a cancellation of the deed made to Chenaults,
and a conveyance to be made to them, excepting the lands
contracted to Mrs. Maxwell. The answer made by the
Chenaults denied, that there was any mistake made by

the Haggins heirs, in the execution of the deed, or that it was acknowledged by mistake, or that it was drafted, otherwise than intended by the parties, and further denied, that Haggins heirs, were ever the owners of the lands conveyed to defendants; that defendants were the owners of same, by adverse possession for the statutory period, and the deed to them was only a conveyance of the claim, which the Haggins heirs made to the lands, for a sufficient consideration. The reply of plaintiffs traversed the allegations of the answer. The court rendered a judgment, dismissing the petition, and denying the relief sought, and in the judgment the only issue decided, and the reason for the decision was expressed as follows: "The court is of the opinion, that the deed, sought by plaintiffs to be reformed, embraces all that the parties contemplated and nothing was left out of it by mistake." It will be observed, that the only question, which the court was asked to decide by the prayer of the petition or the answer, was whether the deed had been executed by any mistake, and whether it contained terms, in accordance with the intentions of the parties, and that was the only issue determined by the court, by the express words of the judgment. Mrs. Maxwell asked the court to quiet her title to an undivided one-half of the boundary of land alleged to be in her possession, in the prayer to her separate reply; but, the court ignored the request, presumably upon the ground, that the deed, excepted her interest, whether the whole or an undivided interest in the boundary of land claimed by her, from its operation. Neither was any question made or decided touching the validity of the exception contained in the deed.

The doctrine of *res judicata* is, that a final judgment rendered upon the merits of the case, by a court having jurisdiction of the subject matter and the parties, is conclusive of the rights of the parties and their privies in another suit on the points and matters in issue in the first suit. A distinction must be drawn, however, between the effect of a judgment in a second suit between the same parties, upon the same cause of action, and a second suit between the same parties upon a different cause of action. In the first instance, the judgment is a complete bar to the second action, not only as to everything which was used in the first action to sustain or defeat the demand, but, everything, which the parties could have used prop-

erly for that purpose; but in the second instance, where
the second suit is between the same parties upon a dif-
ferent cause of action from that involved in the first
action, the judgment in the first action is an estoppel to a
relitigation of questions which were actually litigated and
determined in the first action, and of such questions as
were necessarily determined by the judgment in the first
action in arriving at the decision and is not conclusive as
to matters not decided, and the decision of which was
not essential to the decision in the first suit, although
issues may have been made in reference to them.

In the instant case, conceding that appellant was a
party to the action of Washington Miller, etc. v. E. C.
Chenault, etc., or a privy in estate, to a party to that
action, which he appears to have been, the cause of action
was a different one, in this action, to the one involved in
that. In that, the cause of action, was to secure a re-
formation of a deed upon the ground of mistake, and
whether the mistake had occurred was the only question
decided by the court. While, in this case, the cause of
action is trespass upon the lands, which involves an issue
as to the title to the lands, which was not adjudicated in
the first suit. The accepted rule in determining whether
two suits are upon the same cause of action is, whether
the same evidence will sustain or defeat the action in both
cases. It is evident, that a recovery could not be had,
in the action of Washington Miller, etc. v. E. C. Chenault,
etc., except by evidence showing, that the deed to Che-
naults, by Trabue was made by mistake, nor could such
action be defeated except by evidence controverting the
fact of any mistake. Evidence as to the ownership of
the lands by Chenault, by adverse possession, or the
possession of the land by Mrs. Maxwell, or her ownership
of same, would not be relevant to the issue in that case,
upon which the action was decided, although an issue was
made in the pleadings as to the title to the lands, but it
was not material and hence, was not adjudicated. In
this action, none of the evidence, relating to the right
to a reformation of the deed, could be relevant. The
judgment in the Powell county case being confined, solely,
to the decision, as to whether the execution of the deed
arose from a mistake, and that being the only thing ad-
judicated in the case, the court did not necessarily or im-
pliedly determine any question relating to the ownership

of the land, in arriving at the decision it did make. Hence, the instant action being upon a different cause from the other, and the title to the land not being adjudicated in the other, and the court not having impliedly determined the ownership of the land, in arriving at its judgment, and no fact therein constituting a bar unless adjudicated, the judgment therein, did not estop the appellant to deny appellees' ownership of the lands, in this action, and the court was in error, in giving that effect to it. 15 R. C. L. 964, 978; Jefferson, etc. v. National Bank; 144 Ky. 67; 1 Freeman on Judgments (4th Ed.) sec. 282; 2 Black on Judgments, sec. 767; 23 Cyc. 1216, 1217, 1218, 1196; Russell v. Place, 94 U. S. 606; Thompson v. Bushwell, 80 Fed. 332. It is, however, insisted, that as a matter of law, the exception in the deed, of the lands, within the boundary conveyed to the grantees, of the boundary, heretofore deeded or sold to E. Maxwell is so indefinite and uncertain, that the exception is void, and the entire boundary passed under the deed to the grantees. An exception in a deed, as distinguished from a reservation, is some part of the boundary described, in the deed, which the grantor retains title to and does not convey by the deed. Hicks v. Phillips, 146 Ky. 305. Hence, the deed after the judgment in the Powell court of common pleas, having been left to be construed, according to its terms, as made by the parties, the deed did not convey to the Chenaults such a part of the boundary or such interest in the boundary described in the deed to them, as had theretofore been deeded or sold to Mrs. Maxwell. The certainty necessary in a description of the lands excepted, in a deed to make the exception valid, is the same certainty, as is necessary to make a conveyance of lands in the deed, valid. The certainty there required, is that the description given of the lands in the deed, is such that the property can be located, and that is held, to be certain, which can be made certain. If there is ambiguity in the description of the property intended to be conveyed, or excepted from the conveyance, the identity of the property may be gathered from the intention of the parties and the accompanying circumstances, which surround and are connected with the parties and the property, at the time, but the intention of the parties must be gathered from the deed itself. Parol evidence may be resorted to to designate the property, contained in an

exception, where the terms of the exception so identifies it, that parol proof can be applied to the language of the exception, and thus make it certain. It is clear from the deed, that the grantors did not intend to convey, nor the grantees to receive, under the conveyance, any part of the boundary described in the deed, which had theretofore been deeded or sold to Mrs. Maxwell. The parol proof heard and rejected, makes certain the lands to which the exception was intended to apply. Several years before the deed was executed, Mrs. Maxwell had caused the boundary of two thousand and eight acres to be surveyed and marked, and was holding it in her actual possession, by her tenants. The writing, entered into between her and Trabue, was a sale to her of an undivided one-half of that boundary, for sufficient consideration as expressed in the writing. The language of the exception in the deed gave notice, to the grantees, of the fact, that there was land within the description of the boundary in their deed, which had been disposed of, to Mrs. Maxwell, and, with a small degree of diligence, its location could be definitely ascertained, if not already known by them. The grantee could not accept the deed, without that knowledge. The following decisions illustrate and uphold the views, above expressed touching the certainty of description of property requisite in deeds to make the conveyance valid, and no greater degree is required in the description covered by the exception, Bates v. Harris, 144 Ky. 399; Henly v. Blackford, 1 Dana 2; Henderson v. Perkins, 94 Ky. 207; Tyler v. Ontz, 93 Ky. 331; Posey v. Kimsey, 146 Ky. 205; Hall v. Cotton, 167 Ky. 467; Campbell v. Preece, 133 Ky. 572; Price v. Hayes, 144 Ky. 535; Hyden v. Perkins, 119 Ky. 188; Moagon v. Moagon, 114 Ky. 855; Ellis v. Deadman's Heirs, 4 Bibb. 466; Terry v. Wilson, 188 Ky. 155; Matherly v. Wright. 171 Ky. 264. Hence, in as much as the judgment of the Powell common pleas court makes the meaning of the deed from Haggins' heirs by Trabue to the Chenaults a subject *res judicata,* and confines its meaning to its exact terms, the deed conveyed to the Chenaults, the title of the Haggins heirs to the boundary of land, embraced by the lines A to H, H to G, G to F, F to A, except as to any lands within such boundary, which were then occupied by Jackson Adams, and to such lands or to such interests in the lands as had theretofore been deeded or sold by

Haggins' heirs to William Townsend or to Elizabeth Maxwell.

The evidence tends to prove, that an undivided one-half of the boundary, described by the lines, A to B, B to C, C to D, D to F and F to A had theretofore been sold to Maxwell by Trabue, for the Haggins heirs, and the question of whether the lands affected by the exception can be located so as to make the property referred to a matter of reasonable certainty is dependent upon the evidence. Hence, the court was in error in rejecting proof of the contents, and execution of the writing between Trabue and Mrs. Maxwell, and as the depositions of Trabue and Mrs. Maxwell were given in an action to which the defendants and the privies of appellant were parties, and as both are now dead, such part of the depositions should have been permitted to be read, as tended to prove the execution and contents of the writing between them, and the location of the land embraced by the exception to which the writing referred, and any other portion of the depositions, which contains competent evidence upon the issues between the present parties, provided the depositions were filed in this action before the trial. Kerr v. Gibson, 8 Bush 130; Oliver, etc. v. Louisville & Nashville R. R. Co., 17 K. L. R. 840.

(2) While the court rested its decision in directing the verdict for appellees, solely, upon the supposed effect of the judgment of Miller, etc v. Chenault, etc., in the Powell common pleas court, if the action of the court for any other reason could be justified, the judgment would not be reversed, and hence, it becomes necessary to advert to the other evidence heard for the appellees upon the trial. It was shown, that in the action of Blackwell v. Miller, etc., decided in the Madison common pleas court, on October 23, 1889, the appellant was one of the plaintiffs in that action. The action was for a division of the lands, which had been claimed by James Townsend, in his lifetime, between Blackwell, Wm. B. Townsend and Miller, and appellant joined Blackwell and Townsend as a plaintiff, asserting interest in the lands and praying for the same relief as the other plaintiffs. The action was not only for a division, but, so far as it was an action against Wilborn and others, was to recover possession of certain portions of the lands, which it was alleged that Wilborn and others held, un-

lawfully, in their possession. The plaintiffs alleged, that they were the owners of the lands, and therefore, entitled to recover the possession from Wilborn, etc. Wilborn and certain others, by their answer, denied the ownership or the right to the possession of that portion of the land, which is included by the lines on the diagram as follows: A to H, H to G, G to E and E to A. The line upon the western side of the boundary, claimed by them, was described as running from the standing rock north to a point not definitely stated, and N. 9 W. is the boundary now claimed by appellees. Wilborn and his cotenants claimed the possession, and the right to the possession of the land as the tenants of the Chenaults, whom they alleged, were the owners of the boundary described in their answer by adverse possession for the statutory period. To enable plaintiffs to recover in that action, it was necessary for them to show a superior title to the lands, and thus the title of the plaintiffs was put directly in issue, and as between them and Wilborn, etc., there was necessarily no other issue, except the title of the plaintiff.

The trial resulted in a verdict and judgment for defendants, and does not appear from anything appearing upon the record to have been determined from anything, except upon the merits of the action. It seems, that this judgment would be a bar to the appellant claiming anything in the lands, which were in controversy in that action, on account of any title, which he may have had at the time of the judgment if the appellees were parties to that action upon the record or participated in the defense. It was his duty to have brought forward all the titles and claims to titles, that he then had, and he could not rest his action upon one claim of title alone, when he had others, and being defeated upon the claim of title put forward, he could not cut and come again and require the courts to adjudicate his rights by piecemeal. The evidence, however, shows, that he is also relying upon a claim of title, acquired since the rendition of the judgment in the case of Blackwell, etc. v. Miller, etc., and such title, if any he has, would not be barred by the judgment in that case. 23 Cyc. 1331.

The evidence heard, did not distinctly show, that the trespasses complained of, in this action, were committed upon the portion of the lands, which were involved in

the action of Blackwell, etc. v. Miller, etc., and if not within the boundary involved in that action, the title to the lands, upon which the trespasses were committed, was not adjudicated adversely to appellant in that action. The appellees, Chenaults, were not parties upon the record in that action, and the judgment would not be binding upon them, if it had been adverse to their tenants, unless they had assisted or directed the defense which they might have lawfully done for their tenants. If they are not bound by the judgment, it would not be a bar to the assertion of any right by appellant, as the bar or the judgment should be a mutuality. 23 Cyc. 1238; Bridges v. McAllister, 106 Ky. 791; Chiles v. Conley, 2 Dana 21; Schmidt v. L. C. & L. Ry. Co., 99 Ky. 143; Herman Sections, 150-152; Valentine v. Mahoney, 37 Cal. 389. The evidence does not show, that the Chenaults were parties upon the record in the suit of Blackwell, et al. v. Miller, et al., and while there were some statements and admissions in pleadings and deeds, from which it might be inferred, that they participated in the defense of the action for their tenants, the burden of showing, they participated is upon them and such of the inferences which may be drawn, as above stated, as are competent evidence between the parties to this action, are not altogether uncontradicted by other circumstances and inferences and the question of the participation of the Chenaults in the defense of the action is a question of fact to be determined by the jury under proper instructions.

(3)   The evidence offered by appellees in support of their title to the land by adverse possession would not justify a directed verdict in their favor, because, while there was some slight evidence in support of their claim of adverse possession, there was other evidence contradictory of it, which made a question for the jury.

(4)   It is urged, that the directed verdict was justified because of the deed executed by Trabue for himself and the Haggins heirs, to appellant and others, in 1898, as it expressly excepts from the operation of the conveyance, the boundary of land, upon which the trespasses are alleged to have been committed, and we are, further, urged to adjudge in advance, the effect to be given to the deed. It is clear, that if appellant, has no title to the land, except what he may have acquired from this deed,

he has no title at all, but, it is equally clear, that the acceptance of this deed does not estop him from asserting title to the land, excepted from its operation, if he had title to such lands, otherwise. There was evidence, which tended to prove, that appellant had title to an undivided interest in the lands, from sources, other than this deed, and the appellees can not succeed, without showing title to the lands, although appellant should appear to have none. The deed of 1898 does not show any title in the appellees. The deed of 1898, having been accepted by appellant, it is competent evidence, in this action, against him, if under the other facts of the case, it would tend to prove an admission on his part of the existence of any fact adverse to his claim of title. The potency and effect of the deed, as evidence in the action, is dependent upon the other facts and circumstances, which may appear in the evidence, and we can only assume, that the trial court, upon another trial, will give to it, its proper effect, if any it will have, as the facts of the case may require; but, we determine nothing further, than, that upon the present record, the appearance of this deed, in evidence, did not authorize the directed verdict required by the court, neither did the court base its action upon the existence of this deed. When reference is made, as above, to the lands upon which the trespasses are alleged to have been committed, that portion of the lands conveyed by Trabue to the Chenaults, which is, embraced in the Maxwell tract, is meant.

The judgment is therefore reversed and cause remanded for a new trial, and for proceedings, not inconsistent with this opinion.