## Strother v. McClave.

(Decided March 20, 1936.)

As Extended on Denial of Rehearing May 22, 1936.

THOMAS D. THEOBALD, JR., for appellant.

H. R. WILHOIT for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Carter circuit court based on the verdict of a jury in the sum of $777.60 in favor of appellee and against the appellant. The action was filed on March 6, 1935, by the appellee, McClave, to recover four commissions alleged to be due him from the appellant as a result of four

separate trades of real estate that he claimed to have made as agent for appellant over a period of years. The jury found in favor of the appellee on two of the trades, and against him on the other two. Numerous objections are advanced by appellant as to the correctness of the verdict, some of which seem to be well taken, but we do not find it necessary to go beyond the argument made, over objection and exception, by counsel for appellee to the jury to determine that the case must be reversed. All other questions are reserved.

The issues presented by the pleadings and evidence were simply whether or not an agreement had been entered into between appellant and appellee under which the latter was to receive a commission for making certain sales of real estate, and, as to one of the alleged sales, whether appellee's claim was not barred by limittions. No other issues were before the jury. In his argument to the jury counsel for appellee said:·

"But gentlemen you know the situation in this county as well as I do. You know he (meaning appellant) has a mortgage on everything that walks and breathes, a mortgage on every poor man's home in this county.

· "It is common knowledge over this county that the poor of this county, the debtors of this county, the home owners of this county have lived under a reign of terror, and then they jump on Emmett McClave's tactics. Gentlemen there are empty homes, broken hearts, crying children, that will stand as a monument to that man and what he has· done, and they say I oughtn't to come in here and take a case against him—I oughtn't to—nobody oughtn't to come in here and take a case against him—oughtn't to take a case against a big man like that—oughtn't to take a case against him—the poor and defenseless and weak ought to congratulate this man over here for having the courage to raise up and strike back at that power that has been crushing the life out of the people in this county—that is what it is, gentlemen— this is just a renewal of the age old axiom—of the rich against the poor, of the privileged against the unprivileged, just a continuation of it.

"If you return a verdict for the defendant they

will gather around down here, the privileged class, the rich, they will sing your praises, sing them to the heavens.

"If you return a verdict for the plaintiff it will mean the emancipation of the poor of this county."

Whether or not appellant had a mortgage on every poor man's home, or was responsible for a reign of terror, was not in issue; neither were the affluence of appellant, the praises of the rich, nor the emancipation of the poor.

In the heat of argument, fervor and partisanship are to be expected, and, within their proper field, they may constitute a virtue. Great latitude must and should be allowed counsel in making their arguments to a jury on the issues tried, and all reasonable deductions from the facts adduced in the testimony may properly be made. But this latitude cannot be extended to permit counsel to go outside the record and bring to the attention of the jury matters which have no bearing whatever upon the questions in issue, with an obvious purpose to inflame their passions and incite their prejudices. It would be useless to caution jurors in the progress of a trial against listening to, or participating in, conversations out of the courtroom in regard to the merits of the case on trial if they are to be permitted to listen in the jury box to arguments or statements of fact neither in evidence nor in issue, calculated to warp their judgment and to excite their passions. Louisville & N. R. Co. v. Crow, 107 S. W. 807, 32 Ky. Law Rep. 1145. Odious or unpopular persons are no less entitled to even justice than are ordinary citizens. If it were otherwise, our liberties would be illusory. Counsel should not need to be told that the scope of argument does not include matters outside of the cause tried or that it does not include testimony given by themselves when not under oath.

It is claimed for appellee, however, that the patently improper argument made on his behalf was but responsive to an attack on his integrity and that of his counsel by the counsel for appellant. If counsel for appellant went beyond the limits of proper argument, appellee should have objected thereto, and the court should have limited counsel to his proper field. If,

as is asserted, counsel for appellant, without objection or admonition, strayed beyond the limits of legitimate argument, it but emphasizes the duty of this court to return the case for a fair trial of the questions remaining in the case in accordance with the proprieties.

No transcript of the exact words used by appellant's attorney is contained in the bill of exceptions, but the trial court inserted therein a statement of the substance of his argument, as well as it could be recalled by counsel for the appellee, at the time that the motion for a new trial was overruled. While the statement indicates that counsel for appellant referred to certain matters not in the record, it by no means furnished a basis for the philippic on behalf of appellee, nor does it show that the argument for appellee was entirely responsive thereto. Nothing in the speech of appellant's counsel invited the errors contained in that of appellee's.

Personalities between counsel have no place in argument before a jury. They are degrading to the individuals involved, and tend to bring the profession itself into disrepute. Time consumed in recriminations can better be devoted to assisting the jury in appraising the evidence.

A motion was made to dismiss the appeal for the reason that appellant had failed to file a schedule in the office of the clerk of the Carter circuit court within ninety days after the appeal was allowed by that court. Civil Code of Practice, sec. 737. Where the entire record is seasonably filed in this court, the filing of a schedule is not necessary. Grubbs v. Fish, 97 S. W. 358, 29 Ky. Law Rep. 1291. The clerk certifies that the record before us is complete with the exception of a summons and return thereon and subpoenas and returns thereon. No issue is presented here involving either the summons or the subpœnas, and there is no claim of any prejudice resulting from the omission. In Louisville Cooperage Co. v. Farmer, 107 S. W. 770, 32 Ky. Law Rep. 1110, it was held that it was unnecessary to include subpœnas unless they were made a part of the record by order or bill of exceptions, and that where the defendant answered, it was unnecessary to copy the summons or return. Certainly, where, as here, the court can see for itself that every essential

part of the record is before it, the failure to include subpœnas or summons is not a sufficient cause for dismissal of the appeal. Compare Clark's Heirs v. Boyd, 152 Ky. 234, 153 S. W. 227; Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442.

Judgment reversed.