## Woods et al. v. Hughes.

March 20, 1942.

100

Raymond B. Dycus for appellants.

Thomas Waller, Thomas W. Threlkeld, Henry O. Whitlow and Charles Ferguson for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Charles Conant died in 1935 at the age of 89 in the house and on the farm where he was born, which had been owned by him, his father and grandfather for more than 100 years. The farm was at the outskirts of Smithland and contained 104 acres. The residence was an old brick house located on Conant Hill overlooking the confluence of the Cumberland and Ohio rivers. In recent years the farm has been traversed by four or five roads which cut it into several parcels, and only the bottom land is tillable, although the hill-land is suitable for pasture. Besides this farm, Mr. Conant owned Cache Island located in the Ohio river some 10 miles below Smithland, also a 10 acre tract, the latter being of little value. He had no children and was survived by his widow, Mrs. Cora C. Conant, to whom he devised all of his property. Mrs. Conant's invalid sister, Mrs. Laura C. Webb, resided with her in the old Conant home from 1937 until

Mrs. Conant's death in May 1939, after which Mrs. Webb returned to her own home in Smithland, where she died in the fall of 1939.

This suit was brought by the executor of Mrs. Webb to obtain a construction of the wills of these two ladies. Mrs. Conant's will reads:

"I want to give to my niece Kate D. Love and my nephews Bertrand and Harry G. Davis and Douglas Davis two dollars each, and all else that I possess with home and contents to be given to my sister, Laura C. Webb, with the exception of Cache Island, which is to be given Charles Crawford. This was Charley's wish. At my sister's death my homestead is to be given to Julia Conant Thompson. 　*　*　* This Jan. 26, 1937."

The pertinent part of Mrs. Webb's will reads:

"It is my wish that all real estate left me in the will of Cora Conant, my sister, as soon as practical, be sold privately or public auction and the proceeds be equally divided among the following: Mr. and Mrs. Henry Woods (Marion), Mr. and Mrs. Harry Blades, Sr., (Princeton), Mr. and Mrs. David Webb, Sr., 　*　*　*. Aug. 23, 1939."

There is no ambiguity in Mrs. Webb's will and the reason for setting it out in the petition is it attempted to dispose of property Mrs. Webb claimed under her sister's will.

The question for determination is what estate did Mrs. Webb take in the Conant farm. Did testatrix in the use of the word "homestead" intend to limit Mrs. Thompson to the house and grounds immediately surrounding it, with outbuildings appurtenant thereto (the curtilage so to speak) of a value of $1,000; or did she use "homestead" in the popular or non-technical sense of "home place," intending thereby to devise the entire Conant farm of 104 acres to Mrs. Thompson?

The chancellor in a carefully considered written opinion held Mrs. Webb was devised a life estate in the Conant farm with remainder in the entire farm to Mrs. Thompson. On this appeal the persons to whom Mrs. Webb devised the proceeds from the sale of the real estate she received through Mrs. Conant's will contend that Mrs. Webb took the Conant farm in fee; if not, then

the word "homestead" in the devise to Mrs. Thompson passed to her only the house and the grounds immediately around it.

Appellant argues that as Mrs. Conant devised the absolute fee in all of her property (except Cache Island) to Mrs. Webb, she could not limit the estate by a subsequent clause in her will. But they are not strongly insisting upon this position and appear to realize this court has long since adopted the rule that if a testator subsequently inserts a clause in the will which destroys the power of the devisee to dispose of or consume the property, thereby manifesting an intention not to devise an absolute estate by the previous clause, his intention will be given effect in limiting the estate. Thus when a will devises property to one and a subsequent clause therein devises the same property to another at the death of the first taker, the former takes a life estate and the latter the fee. However, should the subsequent clause only dispose of that portion of the property which the first taker does not dispose of or consume, then such subsequent or limiting clause will be given no effect as the first taker's absolute fee with right of disposition has not been diminished. One of the earlier cases on this point is Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645, and a recent one is Scott v. Smith, 286 Ky. 697, 151 S. W. (2d) 770. Therefore, Mrs. Webb took only a life estate in the Conant farm with remainder in Mrs. Thompson, provided the testatrix intended to include the entire farm in the devise to the latter.

The next question is what did Mrs. Conant intend by the sentence "At my sister's death, my *homestead* (our italics) is to be given to Julia Conant Thompson"? It will be noted in the devise to Mrs. Webb, testatrix uses this language, "and all else I possess with *home* (our italics) and contents to be given to my sister, Laura C. Webb." This is a holographic will and as is not unusual by the laity, testatrix used the words "homestead" and "home" synonymously or interchangeably. There can be no doubt that when she devised her "home" to her sister for life she intended to include the entire home farm upon which she and her husband spent their married life. Likewise, there can be no doubt that when she devised "my homestead" to Julia Conant Thompson after Mrs. Webb's death, she intended Mrs. Thompson should take the entire farm.

It is common knowledge that people generally use "home" and "homestead" as meaning one and the same thing. Usually, it is only those learned in the law who realize "homestead" has a technical meaning which distinguishes it from "home." The will under consideration was not drafted by a lawyer, but was written by Mrs. Conant and there is every reason to believe she used "homestead" in the popular sense given that word by laymen. We have been cited no case from this jurisdiction where the court has defined "homestead" when used in holographic wills of laymen, and we have found none. But the chancellor's opinion calls attention to Fullenlove v. Vaughn, 151 Ky. 513, 152 S. W. 570, 571, where the devise was, "the homestead upon which I reside, containing about sixty acres"; and to Shepherd v. Moore, 283 Ky. 181, 140 S. W. (2d) 810, 811, where the devise was, "our homestead originally containing about 35 acres"; and to McBrayer's Adm'r v. Yates, 185 Ky. 140, 214 S. W. 815, where the devise was, "one-third interest in my homestead." None of these cases involved the construction of the word "homestead," but the three opinions make no distinction between "homestead" and "home place," evidencing that this court treated the term "homestead" as used in the three wills as being synonymous with "home place."

But we find courts of other jurisdictions have decided this identical question. In Kennedy v. Kennedy, 105 Ill. 350, testator resided on his 630 acre farm and the devise was, "I give and bequeath to my wife, Mary, my homestead." It was there written:

"We are of the opinion that the testator in this case did not employ the term "homestead" in the statutory sense, as known in the Homestead Exemption law, but that he used it in the untechnical, ordinary acceptation of the word,—that he meant by it his home place, the place upon which he lived. And we do not know how we can restrict this in extent to any particular legal subdivision, or to any definite quantity of land short of the entire place which was used and occupied together,—which is to say, the testator intended here to embrace his home farm, this whole body of land in Sections 16, 17 and 20, which was all connected together, which he lived upon, and carried on as one single farm."

In Fearing, Adm'x, v. Swift, 97 Mass 413, the devise

was, "Homestead and buildings thereon, to have and to hold equally the lower side of the road." The court wrote:

"The word 'homestead' is evidently used to designate the boundaries of the land, and not to quality of the estate given."

In Hopkins v. Grimes, 14 Iowa 73, the will directed that in case the widow remarried testator's homestead should be sold. In construing the will the court said:

"At the time of his death, he lived on a farm in the country, of course he used the term in a sense applicable to an agricultural or country residence. Farms are of various sizes, composed of one or more tracts. The word homestead is indeterminate, and imports no specific quantity of land, but was employed, I apprehend, by the testator, in its then common acceptation to include all the land that was appurtenant to, used and considered by him as making up the farm which he cultivated, and upon which he resided."

In International Harvester Co. of America v. Bye, 184 Iowa 1053, 169 N. W. 382, 383, testator devised "my homestead property" and it was held he used "homestead" in the popular rather than the technical sense and intended to bequeath the land upon which he lived.

Certainly, the fact that the Conant farm in recent years was traversed by at least four highways, resulting in its being cut into several tracts did not prevent it from being one farm. Nor did the renting of different tracts to different parties for cultivation cause this farm to lose its entity as the Conant home place, or the Conant homestead.

In order to show what testatrix meant in using the words "my homestead," Mrs. Thompson introduced several witnesses who testified in effect that they had heard Mrs. Conant say Mrs. Thompson would get the home farm. Appellant strenuously insists such testimony is incompetent as it is an attempt to show by parol testimony the declarations of the testatrix as to what disposition she intended to make of her property. The chancellor after citing P'Simer v. Steele, 106 S. W. 851, 32 Ky. Law Rep. 647; Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; Noel v. Jones, 185 Ky. 835, 216 S. W. 98; Ratliff v. Yost, 263 Ky. 239, 92 S. W. (2d) 95, and 28 R. C. L.,

Section 245, p. 273, all dealing with the admissibility of parol testimony for the purpose of explaining testator's intentions from the words contained in the will, held it was not necessary to determine whether or not the offered parol testimony was competent. His reason was that after he had sustained objections thereto when such testimony was offered by Mrs. Thompson, the devisees of Mrs. Webb attempted to introduce like testimony to support their position, and by so doing waived their objections to the testimony offered by Mrs. Thompson. Without deciding whether the chancellor supported his conclusion with the proper reasoning, we are likewise of the opinion it was unnecessary to determine the competency of such testimony because when considered as a whole there was no ambiguity in Mrs. Conant's will. "Homestead" as therein used plainly means "home place." However, the offered testimony by both sides was to the effect that by "homestead" Mrs. Conant referred to the 104 acre farm.

Complaint is made by appellants, the devisees of Mrs. Webb, that the chancellor erroneously taxed against them so much of the court cost as was incurred by reason of their defense. They were necessary parties to this action because the property involved in the construction of Mrs. Conant's will had been devised to them. By answer they asserted claim thereto and when the litigation was decided adversely to them, the chancellor properly taxed against them that portion of the court cost which had been incurred by reason of their asserting claim to the property devised. Section 889, Kentucky Statutes; People's Trust Co. of Madison, Indiana, v. Deweese, 143 Ky. 730, 137 S. W. 201.

The judgment is affirmed.