# Kelly v. Kelly's Ex'r et al.

March 20, 1945.

A. H. Barker for appellant.

L. M. Ackman for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Charles J. Kelly died testate July 8, 1943, a resident of Pendleton county. Besides his widow, Agnes Kelly, he left five children by a former marriage and several grandchildren who were the children of a deceased daughter. He married Agnes Kelly in 1936, and there were no children by this marriage. All of the children and grandchildren who were his heirs at law were more than 21 years of age when the testator died. The children and grandchildren of the testator brought an action in the Pendleton circuit court against Agnes Kelly to settle the estate of Charles J. Kelly and to sell a farm containing 135 acres of land on the ground of indivisibility. They asked that the land be sold as a whole, and that the widow be paid the present cash value of her dower interest therein. A copy of the will was filed

with and made a part of the petition. In her answer the defendant, Agnes Kelly, alleged that under clause 3 of her husband's will she was given a life estate in the 135-acre farm, and that it was her intention to live on the farm and hold it under the terms of the will for and during her life. The will of Charles J. Kelly reads:

"I Charles James Kelly, of Pendleton County, Kentucky, make and ordain this my last will and testament.

"1. I bequeath to my wife Agnes Kelly all of my household goods, except the piano, which I give to my daughter, Ethel Caldwell. If my wife sees proper, she may give any portion of my house goods to my children in remembrance of their deceased mother.

"2. I bequeath to my wife Agnes all the remainder of my personal property, including livestock and poultry, after the payment of my just debts.

"3. It is my will that my wife Agnes have and enjoy a homestead in my farm if she cares to live upon it, but if not, then it is my will that she have her dower interest in my farm.

"4. I have given the Good Will Club the privilege of building its house on my lands, and it is my will that the Good Will Club have and enjoy the use of the lot or plot of ground on which the club house stands, with the grounds now set apart for its use, so long as the same is used for the purposes it was organized, and so long as the proceedings and meetings of the club are conducted in a suitable manner. Otherwise the ground is to revert to my estate.

"5. All the rest and remainder of my estate I give to my children in equal shares, share and share alike. To my children who are living, namely: John Henry Kelly, Ernest Kelly, Ethel Caldwell, Frank Kelly, and Hilda Coleman. And to the children of my deceased daughter, Edith Rosenstiel, I also give one equal portion and share, being the share of their mother.

"6. I nominate my wife Agnes Kelly and my son, Ernest Kelly as the executors of this my will.

"In testimony whereof, I have set my hand, this May 20, 1943.

"(Signed) Charles J. Kelly."

"Witnesses:

"W. C. Aulick
"E. E. Barton"

"Codicil

"On this May 20th, 1943, I make this codicil to my above will and testament.

"It is my will that my wife Agnes have all the remainder of my personal property, free from any debts that I might owe, and that any debts owing by my estate be paid out of my real estate. I also authorize my executors to purchase at reasonable cost, a suitable marker for my grave.

"(Signed)    Charles J. Kelly"

"Witnesses

"W. C. Aulick
"E. E. Barton"

The case was submitted on the pleadings and exhibits for a construction of the will, and the court adjudged that "under said will the widow, Agnes Kelly, is entitled to a homestead or dower, in the lands of said decedent, or as she may elect, and her homestead or dower is to be free of the debts of the decedent." The defendant has appealed and contends that the will properly construed gives to her a life estate in the entire farm, such estate to end when she ceases to live upon the land.

Whether or not the court's construction of the will is correct is the only question presented by this appeal, except a preliminary question of practice. The appellees have moved to dismiss the appeal because a transcript of a part only of the record was filed, no schedule was filed in the lower court, and notice was not served on the appellees as required by section 737 of the Civil Code of Practice.

The appellant filed in this court what purported to be the entire record. It was so certified by the clerk of the Pendleton circuit court. With their motion to dismiss the appeal, the appellees have filed a supplemental transcript which contains several orders which were omitted from the transcript filed by appellant. The only omitted order which has any bearing on the ques-

tion presented on appeal is one traversing, by agreement, the affirmative matter in the defendant's answer. In certifying the supplemental transcript of the record, the clerk stated that the order traversing of record the affirmative matter in the answer was "through error omitted from the original transcript of the record." Where the entire record is filed, a schedule is not necessary. White v. Sharp, 275 Ky. 671, 122 S. W. 2d 474; Strother v. McClave, 264 Ky. 121, 94 S. W. 2d 310. Obviously appellant intended to file a complete record, and the clerk's error in omitting an order did not render the transcript a partial one as contemplated by section 737 of the Code requiring the filing of the schedule and the service of notice on the appellees. It is conceded that the record now before us is complete. The motion to dismiss the appeal is overruled, and we proceed to consider the merits.

We think that the court erred in construing the will as giving to appellant just a dower or homestead of $1000. All of the testator's children by his first marriage and all of the children, except one, of his deceased daughter were married when the will was executed. When the will is read as a whole, it is plain that his primary purpose was to provide for his wife and to give her a share in his estate greater than she would receive under the statutes of descent and distribution. He owned personal property worth approximately $2,300 and his debts amounted to $1,354.87. He gave all of his personal property to his wife, and provided that all debts should be paid out of the real estate. Before the judgment appealed from was rendered, the appellant filed what is called a stipulation in which she stated "believing that she was entitled to a life estate in the lands of Charles J. Kelly, she has heretofore paid a large part of the debts of Charles J. Kelly, deceased, and says she is ready and willing and able to pay the balance of the debts of said estate out of her own property, if she is allowed a life estate in his said lands as provided in the Testator's will." His real estate consisted of a farm of 135 acres purchased in 1897, and on which he lived until his death in 1943. When he disposed of his farm he said: "It is my will that my wife Agnes have and enjoy a homestead in my farm if she cares to live upon it, but if not, then it is my will that she have her dower interest in my farm." The record does not disclose the value of the

farm, but it is stated in appellant's brief that the entire farm is worth approximately $7,000 and the dwelling alone is worth more than $2,000. Regardless of the value, however, it is apparent that the testator in using the word "homestead" was not referring to the statutory exemption of land, including the dwelling house and appurtenances, not exceeding $1,000 in value, which KRS 427.070 provides shall be for the use of the widow as long as she occupies it. When he said that it was his will that his wife should enjoy a homestead in his farm if she cared to live "upon it," he was referring to the entire farm, not to a $1000 interest in it for life. The clear implication is that he intended she should have an interest greater than her dower interest if she desired to live upon the land. The word "homestead" has both a popular and a legal signification. In its popular sense it signifies the dwelling house in which the family resides and the land appurtenant to and used in connection therewith. As used in exemption statutes, it has a more limited meaning. The term in its statutory sense means the land, not exceeding the prescribed amount, upon which is located the dwelling house of the owner, and the right to have it exempted from sale under execution, attachment or judgment. Brannon v. Bohannan, 265 Ky. 394. 96 S. W. 2d 1036. In Ford v. Ford, 70 Wis. 19, 33 N. W. 188, 198, 5 Am. St. Rep. 117, the testator provided by clause 7 of his will that his wife should have the use of his homestead so long as she might desire to live in it as her home. The Wisconsin homestead statute provided that there should be exempt from execution a homestead selected by a resident owner not exceeding one-fourth acre, where the land was not used for agricultural purposes, and the dwelling house thereon and its appurtenances. In construing clause 7 of the Ford will, the court said: "The word 'homestead,' as used in the will, manifestly means the house and all the grounds where the testator lived, and is not restricted to the one-fourth of an acre mentioned in the statute." In Woods v. Hughes, 290 Ky. 99, 160 S. W. 2d 339, 340, the will of Cora C. Conant contained this clause: "At my sister's death my homestead is to be given to Julia Conant Thompson." The court stated the question for decision:

"Did testatrix in the use of the word 'homestead' intend to limit Mrs. Thompson to the house and grounds immediately surrounding it, with outbuildings appurten-

866

ant thereto (the curtilage so to speak) of a value of $1,000; or did she use 'homestead' in the popular or non-technical sense of 'home place', intending thereby to devise the entire Conant farm of 104 acres to Mrs. Thompson?"

It was held that when the testatrix devised "my homestead" to Julia Conant Thompson after her sister's death, she intended Mrs. Thompson should take the entire farm. A number of cases from foreign jurisdictions in which the word "homestead", as used in wills, has been construed as designating the boundaries of the land and not the quality of estate given are cited in the opinion.

We think that the testator's intention was to give to appellant the option of taking her dower interest in the 135-acre farm or a life estate if she cared to live upon it.

The judgment is reversed, with directions to enter judgment in accordance herewith.