## Purdy v. Melton, By et al.

(Decided May 19, 1915.)

### Appeal from Ballard Circuit Court.

1.  Homestead—Husband and Wife.—If a husband is the owner and occupies a homestead with his wife, and abandons his wife, she may, for herself, assert and maintain her right to the homestead.

2.  Homestead—Husband and Wife—Abandonment.—A wife, whose husband has abandoned her, occupies a similar situation, in regard to the homestead, as a widow, whose husband has died the owner and occupant of a homestead, and she is entitled to the homestead as long as she holds possession of same, in person, or, if she leaves same for a temporary purpose, with an intention to return to the occupancy, she may retain the homestead, by holding possession, by an agent or tenant, during her absence from it.

3.  Homestead—Husband and Wife—Forfeiture of Homestead by Wife. —If a widow, or a wife, whose husband has abandoned her, abandons the homestead, without intention to return to its occupancy, or does not maintain possession of the property, by an agent or tenant, or otherwise, she forfeits her right to the homestead.

4. Homestead—Abandonment.—As to whether or not an abandonment of a homestead has occurred necessarily depends upon the particular facts of each particular case.

HENRY F. TURNER for appellant.

J. B. WICKLIFFE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

W. F. Purdy, Jr., was the statutory guardian of Rasco Melton, Minnie Melton, Herbert Melton, and Willis Melton, who were infants, and on the 3rd day of June, 1911, made a settlement with the county court, which showed that he owed these infants $250.45. On the same day he fled the country and has not been heard of since that time. J. H. Tharp, who succeeded W. F. Purdy, Jr., as the guardian for the infants, brought this suit in the Ballard Circuit Court against Purdy, and procured an attachment, at the same time, which was levied upon a house and lot in Bandana, as the property of Purdy. A warning order was made against Purdy, and an attorney appointed for him as a non-resident, who filed his report, showing that he was unable to communicate with Purdy, and was unable to make any affirmative defense for him.

The appellant, Nannie Purdy, wife of W. F. Purdy, Jr., came into court and filed an answer, defending the suit for him under the provisions of Section 34, Subsection 4, of the Civil Code, and, also, an answer for herself, in which she claimed that the house and lot levied upon by the attachment was worth less than the sum of $1,000.00, and that it was the homestead of W. F. Purdy, Jr., and herself from 1903 up to the time that he abandoned her and left the country, and claimed that she was entitled to hold it free from his debts and liabilities as a homestead for herself.

The appellee, Tharp, as guardian, denied the averments of the answer, and, also, averred that long prior to the levy of the attachment it had been abandoned as a homestead by both Purdy and his wife, the appellant. This was controverted of record by agreement of the parties.

The action resulted in a judgment against W. F. Purdy, Jr., for the amount sued for. The attachment was sustained and the house and lot adjudged to be sold in satisfaction of the judgment, and the answer of ap-

pellee, which was, also, treated as her counter-claim, was adjudged to be dismissed. To all of this the appellant, Nannie Purdy, excepted, and prayed an appeal to this court, which was granted. The grounds of the attachment were not denied, and the only question to be determined is, whether the appellant was entitled to hold the house and lot as a homestead.

If the husband is entitled to hold a house and grounds as a homestead under Chapter 46, Sub-division 2, of Ky. Statutes, the wife may assert and hold it as a homestead for herself, if he fails to assert his right to it, or abandons her. Hemphill v. Haas, 88 Ky., 492, 11 S. W., 510; Daisey v. Houlihan, 19 R., 1337; Frazer v. Brashears, 23 R., 2232. In the case, at bar, the appellant and her husband occupied the house and lot, in controversy, for several years, and until he abandoned her and left the country, on the 3rd day of June, 1911. The appellant at that time had a right of homestead in the house and lot, and this right would have continued as long as she was in the possession of the property, by herself, agents, or tenants. Her situation was similar to that of a widow whose husband had died the owner and occupier of a homestead. Her right to a homestead depended upon her occupancy of the land, either by herself, agent, or by a tenant. If she voluntarily surrenders this right of occupancy by abandoning the lands, this works a forfeiture of her homestead and terminates it. Freeman v. Mills, 101 Ky., 142; Bryant v. Bennett, 22 R., 1866; Jones v. Green, 26 R., 1191; Clay v. Wallace, 116 Ky., 599; Phipps v. Acton, 12 Bush, 375. One may temporarily leave a homestead and reside elsewhere for a time, and not lose his right of homestead, if the leaving is temporary, and is done with the intention of returning to the occupancy. Galloway v. Rowlett, 74 S. W., 260; Davis v. Pritchard, 7 S. W., 549; Black v. Black, 12 S. W., 147; McFarland v. Washington, 14 S. W., 354. The homestead right is never abandoned, where there has been an occupancy and a temporary removal with the intention to return. Brown v. Martin, 4 Bush, 50. What is an abandonment of a homestead and what is not must, of course, depend upon the facts of each particular case.

Applying the principles deducible from the authorities above cited, it was necessary for appellant, in order to hold the house and lot as a homestead, to hold the

possession of it, either in person or by an agent, or tenant. If she made a temporary removal from it, it must have been accompanied by an intention of returning to it. The proof in this case shows that she has not resided upon the land since in June, 1911. It fails to show that when she left it, she had any intention to ever return to it. It does not appear that she has retained the possession of it, either by an agent or tenant, or in any other way, or has even pretended to exercise any control over it. With the right to testify, she fails to do so, and no one could know her intentions, as well as herself. There is no proof that she ever intends to occupy it. The court below arrived at the conclusion, that she had abandoned it, and we see no reason to disturb his judgment.

The judgment appealed from is affirmed.