MATÍAS SUAU BALLESTER, demandante y apelante, *v.* ANDRÉS POL SERRANO Y ZULEMA RODRÍGUEZ, demandados y apelados.

No. 5914.—*Sometido:* Enero 13, 1933. *Resuelto:* Febrero 3, 1933.

*José D. Rodríguez* y *Angel Arroyo,* abogados del apelante; *L. Mercader,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El demandante en un procedimiento de desahucio apela de una sentencia adversa y alega que la corte de distrito cometió error al no admitir la declaración de cierto testigo, al sostener una moción de *nonsuit,* al no apreciar debidamente las alegaciones de ambas partes y la prueba aducida por el demandante, y al no dictar sentencia en su favor.

El demandante alegó que en mayo primero de 1931 los demandados le vendieron 229 cuerdas de terreno; que desde la fecha en que se efectuó la venta el demandante había estado en posesión del terreno, mas no de una casa que en éste se hallaba enclavada, que los demandados habían convenido en desalojar dentro de ocho días. De la descripción de la finca hecha en la demanda y en la escritura en que se basa el demandante, se desprende que había un número de casas de vivienda en la finca. Había por lo menos tres. Puede que hubiera más. En la demanda se solicitaba el desahucio de los demandados de la casa por ellos ocupada, no de los terrenos. Esa casa no fué identificada suficientemente ni en la demanda ni en la prueba aducida durante el juicio. En su contestación jurada, después de hacer ciertas admisiones y negativas, los demandados alegaron que ellos eran dueños de la finca descrita en la demanda así como de la casa en que vivían y habían vivido con sus hijos por muchos años y que aun ocupaban como su hogar seguro; que los demandados tenían con Suau Fiol & Co., sociedad de la cual el demandante formaba parte, un crédito refaccionario garantizado con hipoteca, del cual se había hecho un traspaso o cesión simulado a Carreras & Hnos. en fraude de acreedores y con el propósito de obstaculizar la liquidación; que dicha cuenta estaba garantizada con una hipoteca sobre parte de las 229 cuerdas, 68 de las cuales estaban incluídas en la aludida hipoteca; que

en abril 25, 1931, Suau Fiol & Co. escribió al demandado Andrés Pol suplicándole que fuera a la oficina de cierto abogado en Lares para garantizar una cuenta por servicios profesionales; que en mayo primero el demandado fué a Lares con tal objeto y otorgó cierta escritura notarial con ese único fin, y no una escritura de cesión al demandante a quien nada habían vendido, con quien no habían celebrado contrato o pacto alguno, a quien no habían entregado bienes de ninguna clase, y de quien no habían recibido ningún precio o causa de clase alguna; y que los demandados han continuado en posesión de dicha finca como dueños absolutos de la misma en espera de la liquidación de dicha cuenta por Suau Fiol y Co. a fin de pagar el saldo, en caso de que lo hubiera.

Nada hubo en la contestación o en la prueba que cooperara con la demanda en la identificación de la casa de la cual el demandante trataba de desahuciar a los demandados y el juez de distrito no cometió error alguno al dejar de hallar en la contestación o en la prueba la identificación que faltaba en la demanda.

De conformidad con la escritura a que se hace referencia en la demanda y en la contestación, presentada como prueba por el demandante, Andrés Pol y su esposa comparecieron como vendedores y Matías Suau como comprador de las 229 cuerdas 22 céntimos descritas en la demanda. De acuerdo con la escritura se había formado una parcela de 229 cuerdas con 22 céntimos por agrupación de un número de predios, que estaba sujeta a una hipoteca por $17,613.88 a favor de F. Carreras & Hno., que había vencido. Se hizo mención de otros gravámenes que se decía constaban en el registro, aunque en realidad ya habían sido cancelados. En otro de los párrafos de la escritura se hacía constar que los gravámenes pendientes con sus intereses ascendían a $20,000. El adquirente convenía en pagar estas cargas. Ningún dinero pasó de manos y no se mencionó ninguna otra causa.

El notario declaró como testigo del demandante que todas las fincas de que se companía la parcela mayor no estaban hipotecadas a F. Carreras & Hno., y que había una parcela de 18 cuerdas que no había sido incluída en la escritura de enajenación, porque había que transferírsela o dejársela a Andrés Pol. El demandado se opuso y el juez de distrito preguntó al testigo por qué no había hecho constar todo esto en la escritura. El testigo manifestó que ello era innecesario toda vez que la parcela en cuestión no era una de las que se habían agrupado. El juez de distrito entonces preguntó por qué la escritura no había especificado, como causa, la entrega de cierto número de cuerdas a Andrés Pol. El testigo contestó que no se hizo constar eso en el documento porque esa finca pequeña aparecía entonces a nombre de Enrique Pol, y agregó: "Ahí es donde yo voy." El juez de distrito dijo que la corte no admitiría nada de eso, agregando que el testigo tenía que referirse a esa escritura y nada más que a esa escritura. El letrado del demandante manifestó que la escritura de enajenación tenía que ver con la venta de las 18 cuerdas "ya que don Andrés Pol hasta que no le hacía ventas a don Matías Suau no adquiría esas 18 cuerdas." Este abogado no se anotó excepción a las observaciones hechas por el juez de distrito en respuesta a esa manifestación, sino que prosiguió con el examen del testigo. Preguntado si Andrés Pol había dado posesión a Suau, el notario contestó que la escritura demostraba no solamente que había habido entrega de la finca sino también una renuncia de todo derecho, título e interés que Andrés Pol pudiera haber tenido en la finca; y que éste había permanecido en la finca debido a que había solicitado doce o quince días en lo que arreglaba una casa en las 18 cuerdas que iba a adquirir de Enrique Pol como parte de la causa del contrato. El abogado de la parte demandada entonces solicitó que se eliminara esta explicación del testigo en relación con cuestiones que no figuraban en la escritura de enajenación y que equivalían a una alteración de los términos del contrato. El juez de dis-

trito dijo: "La corte no admite esa evidencia." El letrado del demandante excepcionó esta resolución de la corte.

Una de las primeras objeciones de la parte demandada a la declaración del notario fué que en la demanda no se hacía alegación alguna respecto a las cuestiones sobre las cuales se le pedía que declarara. Hemos dicho que la parte demandada no se anotó excepción alguna a ciertas observaciones hechas por el juez de distrito. Lo que el juez dijo fué sustancialmente que el testimonio era una sorpresa para los demandados, quienes no estaban preparados para afrontar nuevas controversias; que dando por sentada la admisibilidad de prueba para explicar la escritura de enajenación, la admisión de tal prueba en un procedimiento de desahucio no era deseable toda vez que los demandados entonces se verían precisados a atacar esta prueba ofreciendo otra evidencia y entonces la controversia dejaría de ser una cuestión de posesión y se convertiría en un conflicto de títulos.

El caso prima facie del demandante hubiera sido más fuerte si no se hubiese puesto a declarar al notario. La moción de *nonsuit* se basó en la declaración del notario. Igualmente ocurrió con la sentencia que más tarde se dictó. El juez de distrito, durante el curso del examen del notario, trató de evitar ese resultado. Se permitió que el notario declarara respecto a la mayor parte de lo que el demandante aparentemente deseaba llevar a conocimiento de la corte. Nada hay que indique que un examen más extenso de este testigo hubiese fortalecido el caso del demandante. El examen del testigo, tal cual se hizo, tiende a una conclusión contraria. El error, de haberse cometido, al tratar de poner límite al interrogatorio del demandante respecto a cuestiones que no se mencionaban ni en la demanda ni en la escritura de enajenación no fué perjudicial.

La declaración del notario vista a la luz de la contestación jurada de los demandados era suficiente para dar algún color a la reclamación de la parte demandada de que la escritura de enajenación, de no haberse obtenido mediante

fraude y falsas simulaciones, era nula por falta de causa, y éstas son cuestiones que no pueden ser consideradas y resueltas en este procedimiento de desahucio.

*La sentencia apelada debe ser confirmada.*