## Brannon et al. v. Bohannon.
(Decided Oct. 2, 1936.)

WILLIAM G. DEARING for appellants.

DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal presents the question of a wife's right of homestead in the residence property of her husband which they, as husband and wife, had lived in and occupied together as such until his abandonment of her. Following this, the husband made a voluntary alienation of the property to one Isaac Mills, who in turn sold and conveyed the same to the appellee, Minnie Bohannon.

The wife having continued to claim and occupy the property as a homestead after her husband's abandonment of her and alienation of the property, and refusing to surrender its possession to purchaser, the latter instituted a forcible detainer suit in the magistrate's court to eject her, upon the trial of which a writ of restitution was granted her. Thereupon appellant instituted this suit in the chancery branch of the Jefferson circuit court, seeking to enjoin the enforcement of the writ dispossessing her.

By her petition and petitions as amended, she alleged that she and Howard H. Brannon were married about October 15, 1935, after which they had lived together in the house (described in the petition) and occupied it as a homestead until about the last of January, 1936, when he had abandoned her, and after which she continued to live in the house and occupy same as a homestead. Further, she alleged that, after her husband's abandonment of her, he entered into a conspiracy with Isaac Mills to sell and convey him his homestead property, and pursuant thereto they secured a notary public, whose term of office, she alleged, had then expired, to take his acknowledgment to the deed and to date the certificate back prior to the time of their marriage; that this deed of conveyance to Mills, notwithstanding its false recital as to the date of conveyance and recordation, was fraudulently made without her knowledge and consent and without a waiver of her homestead rights, by joining therein, after his marriage with and abandonment of her.

Further plaintiff alleged that thereafter, in March, 1936, the said Mills and wife, by their duly executed

deed, conveyed the said property to the appellee, Minnie G. Bohannon, which deed was also duly put to record.

To plaintiff's petition and amended petitions defendant purchaser and grantee of the homestead property (here the appellee) filed demurrers pending plaintiff's motion for an injunction, which the court sustained and dismissed plaintiff's petition.

For reversal of this ruling, this appeal is prosecuted.

The one question thus decided by the trial court, and now before us for decision, is whether or not the husband, after his abandonment of plaintiff, had the legal right to voluntarily sell and alienate this homestead property owned by him without his wife's joining in the conveyance.

No right of creditors or question of coercive sale of the property is here involved. Also the material allegations of plaintiff's petitions are to be taken as confessed for the purposes of the demurrers filed thereto and sustained by the court.

A proper determination of this question calls, first, for a consideration of what is the nature and character of the wife's homestead right.

The origin and character of homestead is thus stated in a very comprehensive annotation upon this subject in 45 A. L. R. 395:

> "The right or privilege commonly known as a homestead estate does not exist at common law, and is purely a statutory or constitutional creation, its nature and extent depending on the law creating it."

Further, section 2, 13 R. C. L. 540, dealing with this subject, says:

> "The word 'homestead' has both a popular and a legal signification. While the term is nearly as old as the English language, its use in a legal sense is quite modern, and is peculiarly American. As used in the various statutes, the word 'homestead' may be defined as meaning not only the property—the real estate—occupied as a home, but also the right to have it exempted from levy and forced sale. In this sense, a homestead is the land not exceeding

the prescribed amount, upon which is the dwelling house, or residence, or habitation, or abode of the owner thereof and of his family; and includes the dwelling house as an indispensable part. * * * A homestead as importing an exemption, is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it, and when these exist in good faith, the essential elements of the homestead right exist, of which the persons entitled to it cannot be divested by acts or influences beyond their volition.''

In section 3, following, it is said:

''Two essentially different theories obtain with reference to the nature of the homestead exemption. One line of cases [to which our own belong] holds that the homestead right cannot, in an absolute sense, be said to be an estate in the land; that the law creates none and leaves the fee as it was before, but in substance declares that the right of occupancy shall not be disturbed while the homestead character exists. * * * According to this view the homestead is, in effect, a mere privilege secured to the debtor and his wife by the statute, to hold and enjoy the property and have it descend as appointed thereby, free of the claims of creditors, unless there is a waiver of rights. * * * It is a right additional to and independent of the ordinary right of ownership. It is an additional tenure as conferred by the law. Other authorities, however, [construing their own particular homestead statutes] take the view that the homestead exemption is an estate in land and not merely an exemption or privilege. Under this view, when the interest of the homesteader does not exceed in value the statutory limit, the homestead estate comprises his entire title, leaving no interest to which liens can attach or which he can convey separately.''

It is recognized as in harmony with both views that, ''in the absence of constitutional or statutory prohibition, the owner of the homestead may sell or encumber it with like effect as if the property had not been set apart as a homestead''; that is, that this power of alienation is not derived from statutes relating to the alienation of homesteads, but exists as an incident of

ownership of the property independently of the homestead law, and any direction and prohibitions of said statute as to alienations are mere restrictions on this antecedent power. 13 R. C. L. sec. 80, p. 621.

Section 1702, Kentucky Statutes, creating a homestead provides as follows:

"In addition to the personal property exempted by this article, there shall, on all debts or liabilities created or incurred after the first day of June, one thousand eight hundred and sixty-six, be exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead, or for purchase money due therefor, so much land, including the dwelling house and appurtenances owned by debtors, who are actual bona fide housekeepers with a family, resident in this Commonwealth, as shall not exceed in value one thousand dollars [$1,000.00]; but this exemption shall not apply to sales under execution, attachment or judgment, if the debt or liability existed prior to the purchase of the land, or of the erection of the improvements thereon."

Since the enactment of this statute in the year 1866, it has remained the law of this jurisdiction.

It is to be noted that the language of this statute merely exempts the homestead from sale under coercive process and leaves the husband's right to alienate the exemption unchanged. Also, after thus providing that the homestead should not be seized for debt (with the exceptions mentioned) and apparently providing that the husband should not be allowed to subject it to seizure therefor, no matter what might be his then need or necessity, the Legislature saw fit to modify such provision by ordaining by section 1706 that he might mortgage, release, or waive such exemption, provided his wife gave her consent thereto, expressed in the solemn form required to divest her of the absolute title.

Construing these sections of the homestead law, we have uniformly held in Brame and Wife v. Craig, 12 Bush (75 Ky.) 404, and the several cases succeeding it, that:

"The homestead exemption is not an estate in the land, but only a privilege of occupying the same

by a housekeeper with a family, as against his creditors; and although the homestead is not subject to coercive sale by a creditor, a sale and conveyance of the tract of land covered by the homestead privilege by the owner thereof is not prohibited by the statute.

"We are of opinion that the homestead exemption law was intended to secure the exempted homestead to the debtor from the coercive grasp of his creditors, but it does not prevent him from selling the land covered by his homestead, and therefore a sale by him of the same for a valuable consideration vests in his vendee all the estate which he had in the land. * * *

"It is conceded that the owner of real estate, before the passage of the homestead act, could alienate the same to whomsoever he pleased, and if so done, for value, his title passed to the vendee; and the homestead law was not intended as a restraint on the power of alienation by the owner, but was intended to save to him, as exempt from coercive sale by his creditors, the homestead occupied by him during his occupancy of the same as such homestead."

This continuing right of the husband to voluntarily alienate his property for a valuable consideration we have held to be not lost by implication, but that it is entirely in harmony with the whole theory of the law with relation to homesteads, "which is based upon the idea that as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home where his family may be sheltered, and live beyond the reach of financial misfortune, and the demands of creditors who have given credit under such law. It is intended to secure to the householder a home for himself and family, regardless of his financial condition, whether solvent or insolvent; without reference to the number of his creditors; and without any special regard to the extent of the estate or title by which the homestead may be owned."

To such effect see, also, Miles v. Hall, 12 Bush (75 Ky.) 105; Pribble v. Hall, 13 Bush (76 Ky.) 61; Hemphill v. Haas, Lyons & Co., 88 Ky. 492, 11 S. W. 510, 11

Ky. Law Rep. 62; Frazier v. Brashears, 66 S. W. 1038, 23 Ky. Law Rep. 2232; Brandenburg v. Petroleum Exploration, 218 Ky. 557, 291 S. W. 757; Damron v. Pikeville Grocery Co., 222 Ky. 749, 2 S. W. (2d) 366; Gullett v. Arnett, 44 S. W. 957, 19 Ky. Law Rep. 1892; Meadows v. Bryant (Ky.) 118 S. W. 306.

In Lear v. Lear, 234 Ky. 369, 28 S. W. (2d) 32, 33, we thus announced the principles above stated:

"The wife or husband of the owner of the homestead has no estate or vested interest in the property during the owner's lifetime. The homestead exemption runs to the owner, and the right of a spouse is a derivative and not a direct one. Demarest v. Allen, 189 Ky. 32, 224 S. W. 458; Summers v. Sprigg, 35 S. W. 1033, 18 Ky. Law Rep. 206. The homestead interest is not an estate, but merely an exemption from sale for the payment of debts, and after the death of the owner is a right of occupancy in the surviving spouse and infant children."

Appellant relies upon the authority of the cases of Purdy v. Melton, 164 Ky. 749, 176 S. W. 346, 347, Potter v. Potter's Receiver, 101 S. W. 905, 31 Ky. Law Rep. 137, and Hemphill v. Haas, Lyons & Co., 88 Ky. 492, 11 S. W. 510, 511, 11 Ky. Law Rep. 62, in support of her contention that upon her husband's abandonment of her and their home, which they had until such time jointly occupied as a homestead, her right of homestead, or her continued occupancy of it as such, became a vested right of homestead in her and exempt to her, even as against a purchaser of the property under her husband's voluntary alienation of it.

In the Purdy Case, supra, the question presented was not the same as that here before us, for the reason that, while the husband there abandoned the wife, when they were together the occupiers of the property later attached by a creditor as his for his debt, there was at no time any attempted voluntary alienation of the homestead by the husband, as is the material fact in the instant case. The court, treating the husband as still the owner of the homestead even after his abandonment of his wife, said:

"The appellant at that time [when the husband abandoned her] had a right of homestead in the

house and lot, and this right would have continued as long as she was in the possession of the property, by herself, agents, or tenants. Her situation was similar to that of a widow whose husband had died the owner and occupier of a homestead.''

In the instant case the husband has not, as there, remained the owner of the property, and therefore the quoted language of the opinion cannot be regarded as here applicable.

Also in the other cited Hemphill and Potter Cases, supra, although the husband had in those cases attempted to convey homestead property by voluntary deed of assignment to a trustee for the benefit of creditors, the court in each case held that such conveyance did not operate to divest either the husband or his wife of the homestead, by reason of the provisions of section 1706, Kentucky Statutes, providing that no mortgage, release, or waiver of such exemption by him shall be valid without the wife's consent, expressed in the same form required to divest her of the absolute title, the court in the Hemphill Case saying:

"It is true this court has heretofore held that provision does not impose any restraint upon the general right of alienation by sale and conveyance. But we think it does, according to a proper construction, apply to deeds of trust for benefit of creditors; for they do not invest the trustee with the beneficial interest in the estate conveyed, nor wholly and absolutely divest the debtor of it, being executed for a similar purpose, and having the same effect as mortgages'';

or, in short, holding that such deeds made for the benefit of creditors were not in their nature voluntary conveyances, but rather of the character of mortgages, which are by the statute invalidated unless consented to in writing by the wife.

Appellant cites no case, however, of this court, nor have we, after a very thorough search made, been able to find one, upholding the homestead right of the wife, where set up against the husband's voluntary alienation of the property, as is here the case. Therefore, influenced by and applying the principles announced in and deducible from the above-cited cases and authorities, it is our conclusion that the learned chancellor here prop-

erly sustained the demurrers to appellant's petitions, attempting to set up a right of homestead, or of occupancy of the property, against the holder of title thereto under the husband's voluntary alienation of it.

Therefore the judgment is affirmed.