PEDRO MARCIAL Y CARLOS FAUSTO, de apellidos FRANCESCHI ANTONGIORGI, demandantes y apelados, *v.* JOSÉ CLAUDIO ELENA, demandado y apelante.

Núm. 7241.—*Sometido:* Diciembre 1, 1936.—*Resuelto:* Mayo 7, 1937.

*Enrique Báez García,* abogado del apelante; *Luis López de Victoria,* abogado de los apelados.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El demandado, dueño de una finca de 111 cuerdas, en la que radica la casa objeto de la presente acción de desahucio en precario, constituyó hipoteca a favor de Juan Ortiz Perichi. Éste ejecutó sumariamente dicha hipoteca y en 18 de julio de 1933 le fué adjudicada la finca por el márshal de la Corte de Distrito de Ponce. Más tarde, en 31 de enero de 1934, la vendió a los aquí demandantes, quienes piden el lanzamiento del demandado.

El demandado negó todos los hechos expuestos en la demanda e interpuso varias defensas, que la corte inferior sintetizó así:

"Que en los límites de la finca que los demandantes alegan que les pertenece hay encerradas tierras pertenecientes al demandado y que, por no haberse deslindado las mismas, éstas han sido usurpadas por los demandantes.

"Que como los demandantes ocupan terrenos del demandado y no pagan canon o merced alguna por ocupar los mismos, lo que ellos dejan de pagar al demandado debe imputarse como el canon o merced que paga el demandado a los demandantes por ocupar la casa en litigio.

"Que la casa en litigio constituye el hogar seguro del demandado y que no debe decretarse el desahucio sin la consignación previa de la suma de $500. .

La corte de distrito dictó sentencia por la que declaró con lugar la demanda sin especial condenación de costas. Apeló el demandado, imputándole a la corte sentenciadora los siguientes errores:

"1. Al declarar con lugar la moción de *nonsuit* e inmediatamente dar permiso a los demandantes para ampliar su prueba, estando en pie la orden de *nonsuit*.

"2. Al declarar sin lugar la segunda moción de *nonsuit*.

"3. Al no declarar que entre las 111 cuerdas que los demandantes describieron en su demanda hay tierras pertenecientes al demandado José Claudio.

"4. Al no declarar que los demandantes detentan tierras del demandado y que esto equivale a una compensación por el uso que de la casa hace el demandado, siendo mutuas las detentaciones.

"5. Al declarar sin lugar la defensa de hogar seguro levantada por el demandado."

Los dos primeros errores pueden ser discutidos conjuntamente.

Aparece del récord que sometido el caso por los demandantes, el demandado formuló una moción de *nonsuit*, fundándose en que la casa objeto del pleito no había sido descrita en forma tal que pudiera ser identificada por el márshal en el caso de recaer sentencia favorable a los demandantes, en apoyo de lo cual citó el caso de *Suau* v. *Pol*, 44 D.P.R. 500. El juez manifestó que "técnicamente la corte cree que realmente la declaración del demandante no ha descrito suficientemente la casa, de acuerdo con el caso que se cita por el demandado, de *Suau* v. *Pol*." Los demandantes entonces, y antes de que la Corte resolviera la moción de *nonsuit*, solicitaron permiso para ampliar su prueba en el sentido de describir la casa. El demandado se opuso a la concesión de ese permiso, y la corte resolvió finalmente la cuestión así:

"Juez.—Es cuestión de discreción de la corte .... Se declara con lugar la moción de *nonsuit* y con lugar la moción de los demandantes para que se les permita ampliar la prueba de su caso."

En vista de esa resolución declaró nuevamente Pedro Marcial Franceschi, que ya lo había hecho anteriormente como único testigo de los demandantes. Reproducida la moción de *nonsuit*, basándose en los mismos fundamentos,

fué declarada in lugar, y el demandado procedió a presentar su caso.

El artículo 192 del Código de Enjuiciamiento Civil, equivalente al 581 de California, dispone:

"Art. 192.—Se podrá desistir de una demanda, o declararse abandonada, en los casos siguientes:

"1.   .    .    .    .    .    .    .    .    .    .

"2.   .    .    .    .    .    .    .    .    .    .

"3.   .    .    .    .    .    .    .    .    .    .

"4.   .    .    .    .    .    .    .    .    .    .

"5. Por la corte, a moción del demandado, cuando en el juicio no presentare el demandante prueba suficiente para fundar sobre ésta una sentencia. El desistimiento mencionado en los dos primeros párrafos se efectúa mediante la debida anotación en el libro de registro del secretario. Hecho esto se dictará sentencia de conformidad."

Veamos la interpretación que las cortes de California han dado al estatuto de dicho estado.

"Uno de los objetos principales de la moción de *nonsuit* es señalar a la corte y al abogado contrario las omisiones y defectos específicos en la prueba del caso del demandante; y esto con el propósito, en cuanto al demandante, de que éste pueda suplir, si le fuere posible, las deficiencias específicas en su prueba. (Citas.) Cuando el demandante en este caso, después de habérsele llamado la atención sobre el particular, ofreció hacer eso, era el deber de la corte permitirle que supliera la evidencia que faltaba; y fué un error negar ese privilegio al demandante y después de tal negativa declarar con lugar la moción de *nonsuit. Low* v. *Warden,* 70 Cal. 19, 11 Pac. 350." *Sferlazzo* v. *Oliphant,* 24 Cal. A. 81, 140 Pac. 289.

"La moción de *nonsuit* debe especificar los fundamentos sobre que se basa, para dar así una oportunidad a la parte adversa para que pueda subsanar aquellos defectos que fueren subsanables." Véanse: *Daley* v. *Russ,* 86 Cal. 114; *Estate of Higgins,* 156 Cal. 257, 260; *Christenson Lbr. Co.* v. *Buckley,* 17 Cal. A. 37; *Williamson* v. *Williamson,* 41 Cal. A. 721; *Lally* v. *Kuster,* 48 Cal. A. 355.

La ley deja la concesión del permiso para corregir errores o suplir deficiencias en la prueba a la discreción de la corte. Así lo sostiene la jurisprudencia siguiente: *Gar-*

*diner* v. *Schmaelzle,* 47 Cal. 588; *Abbey Homestead Assn.* v. *Willard,* 48 Cal. 614; *Clavey* v. *Lord,* 87 Cal. 413; *Tuller* v. *Arnold,* 98 Cal. 522; *San Pedro Lumber Co.* v. *Schroeter,* 156 Cal. 158; *Fee* v. *McPhee Co.,* 31 Cal. App. 295.

Convenimos en que la resolución de la corte inferior no se ajustó a la mejor práctica, pues si en el ejercicio de su discreción creyó el tribunal que era justo permitir a los demandantes ampliar su prueba para identificar mejor la casa objeto del desahucio, debió conceder el permiso solicitado antes de declarar con lugar la moción de *nonsuit.* ¿Qué necesidad hubo de decretar el *nonsuit,* si inmediatamente había de quedar sin efecto la orden al abrirse el caso para ampliación de la prueba del demandante? Lo más procedente hubiera sido conceder el permiso solicitado por el demandante y declarar sin lugar la moción de *nonsuit.* Creemos, sin embargo, que el error es puramente técnico y que en nada ha podido perjudicar al apelante. El demandante formuló su petición a tiempo y no debe ser perjudicado ahora por un error en el que no tuvo participación. Véase: *Estate of Higgins,* supra.

El examen del récord revela que la prueba adicional ofrecida por el demandante dejó claramente identificada la casa en cuestión. No cometió error el tribunal *a quo* al declararlo así.

■■ Examinada toda la prueba de ambas partes, no surge de ella conflicto alguno en cuanto al título de la casa cuya posesión reclamaran los demandantes. Estos probaron su título presentando la escritura otorgada por el márshal y los demás documentos necesarios para que la finca fuera inscrita como lo fué a nombre de dichos demandantes. No surge de la prueba del demandado un título a su favor sobre el predio que reclama como suyo. Apreciándola en todo su valor, la prueba sólo demuestra que Claudio es dueño de ciertas tierras al oeste de la finca de los demandantes, pero no precisa cuáles son ésas. La prueba del demandado es claramente insuficiente para destruir la acción posesoria

de los demandantes. No cometió la corte inferior el tercer error señalado. Véanse: *Lafontaine et al.* v. *Lafontaine y Pérez,* 30 D.P.R. 194; *Marrero* v. *Plumey,* 35 D.P.R. 1015.

El cuarto error señalado debe seguir igual suerte que el tercero, por las mismas razones, y porque aun asumiendo que los demandantes estuviesen detentando tierras del demandado, la teoría del apelante resultaría siempre insostenible. La prueba no revela el más leve indicio de un cuasi contrato, y menos aún de un contrato entre demandado y demandantes que pueda dar origen a la relación recíproca de acreedor y deudor, indispensable a la compensación.

██ A nuestro juicio la corte inferior erró al declarar sin lugar la defensa de hogar seguro interpuesta por el demandado.

De la prueba practicada aparece que durante la pendencia y tramitación del procedimiento ejecutivo sumario seguido por Juan Ortiz Perichi contra José Claudio Elena, éste vendió la finca hiptecada a Pedro Claudio Cruz, por escritura de 15 de julio de 1933, la que fué inscrita en el registro de la propiedad; que al ser presentada para su inscripción la escritura de venta judicial de 18 de julio de 1933, otorgada por el márshal a favor del ejecutante Juan Ortiz Perichi, el registrador se negó a inscribirla por el fundamento de que el procedimiento se había seguido contra José Claudio Elena, el aquí demandado, y no contra Pedro Claudio Cruz, dueño según el registro de la finca hipotecada, la que adquirió sin que en el registro apareciera anotación alguna de embargo o de aviso de acción pendiente; y que la referida escritura fué inscrita posteriormente de acuerdo con la resolución dictada por el Tribunal Supremo en el caso de *Ortiz* v. *Registrador,* 45 D.P.R. 791. También aparece probado que el demandado José Claudio Elena ha continuado en posesión de la casa objeto del desahucio, después de haberla vendido a su hijo Pedro Claudio Cruz y después de la venta y adjudicación de la finca. Entre la prueba documental presentada no figura la escritura de venta otor-

gada por José Claudio Elena a favor de Pedro Claudio Cruz. Y no se ha aducido por los demandantes prueba alguna que tienda a establecer el hecho de que el vendedor renunciara expresamente su derecho de hogar seguro.

La "Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa", aprobada en 12 de marzo de 1903 (Comp. 1000 *et seq.*), vigente en la fecha en que los demandantes adquirieron la finca por compra a Ortiz Perichi, es la ley aplicable para fijar los derechos de las partes litigantes. Dicha ley provee:

"Artículo 3.—Que no será válida ninguna renuncia o traspaso de una finca así exentada a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, su esposo o esposa, si él o ella lo tuvieren, o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso, o sin la orden de la corte de distrito disponiendo el traspaso del título de la propiedad, siempre que la exención se haga extensiva a un hijo o hijos."

Interpretando el artículo arriba transcrito, en el caso de *Pagán* v. *Padín Tirado,* 45 D.P.R. 174, esta Corte Suprema, por voz de su Juez Asociado Sr. Córdova Dávila, se expresó así:

"El artículo tercero de la ley para definir el *homestead* u hogar seguro y para exentarlo de una venta forzosa dice que no será válida ninguna renuncia o traspaso de una finca así exentada, a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, etc. En inglés se usa la palabra *'conveyance'* y se dice que la renuncia al *'homestead'* no será válida a menos que no lo disponga expresamente *'the instrument of conveyance.'* Las palabras de la ley revelan claramente su propósito. Cuando se transmite una propiedad no se entiende renunciado por el dueño su derecho al hogar seguro, a menos que se renuncie expresamente este derecho en el documento de transmisión.... La palabra *'conveyance'* que usa el texto inglés equivale a trasmisión por escrito de propiedad o título a propiedad inmueble de una persona a otra."

En *Veve* v. *Keith,* 49 D.P.R. 185, esta Corte Suprema resolvió que el derecho a reclamar el *homestead* surge desde el momento en que se decreta la venta de la finca en ejecución de sentencia.

En la decisión del recurso gubernativo núm. 982, de *Matilde Rodríguez* v. *Registrador. de la Propiedad de Mayagüez,* (ante, pág. 372), esta Corte Suprema se expresó así:

"El hecho de que el hogar seguro sea irrenunciable no significa que una vez creado y en existencia, no pueda, cuando sea en beneficio de la persona poseedora de tal derecho, ser vendido, permutado o estar sujeto a otros posibles incidentes del dominio."

Y a continuación, a manera de *dictum,* añadimos:

"Cuando una persona tiene el dominio absoluto de una propiedad y la vende, teniendo con ello la intención de enajenar o de disponer de su título o interés, completos, el derecho de hogar seguro necesariamente se amalgama (*merges*) en el derecho mayor de dominio. *In praesentia majoris cessat potentia minoris.*"

Debemos hacer constar, para evitar que se pueda dar al referido *dictum* mayor alcance que el que tuvimos en mente, que lo que quisimos decir fué que el dueño de un derecho de hogar seguro puede venderlo, permutarlo o gravarlo, siempre que lo haga constar expresamente en la escritura o instrumento correspondiente; y que el derecho de *homestead* se transmite también al comprador de un inmueble, cuando el vendedor por los términos del contrato vende, cede y traspasa todo su título e interés sobre el inmueble y entrega la posesión física del mismo al comprador, sin hacer expresa reserva de su derecho de hogar seguro.

No habiendo probado los demandantes que el demandado José Claudio Elena renunciara expresamente el derecho de *homestead* sobre la casa objeto del desahucio, y resultando probado que dicho demandado continuó y está aún en posesión de la finca, debemos resolver de acuerdo con la jurisprudencia citada que dicho demandado tiene un derecho de hogar seguro sobre la casa en cuestión y que su derecho a reclamarlo surgió desde el momento en que se ordenó la venta de la finca como consecuencia de la ejecución de la hipoteca a favor de Juan Ortiz Perichi. Ese derecho no puede ser anulado por el traspaso de la propiedad hecho por Juan

Ortiz Perichi a favor de los demandantes. Cuando éstos compraron la finca, el demandado, antiguo dueño de la misma, se encontraba ocupando la casa con su familia, hecho que no podían ignorar los demandantes y que era por sí solo suficiente para darles aviso y obligarles a indagar si el demandado ocupaba la propiedad en concepto de arrendatario o como dueño del derecho de *homestead*.

En el caso de *Arzuaga* v. *Ramírez*, 50 D.P.R. 106, esta Corte Suprema resolvió que es prematura una acción de desahucio cuando ésta se entabla sin que el demandante haya pagado o consignado previamente en corte el importe del hogar seguro reclamado. De acuerdo con dicha decisión deberíamos revocar la sentencia apelada por haberse interpuesto prematuramente la demanda. Empero, el apelante no solicita la revocación y solamente suplica que se modifique la sentencia de la corte de distrito, resolviendo que el demandado apelante tiene un derecho de hogar seguro sobre la casa en cuestión o que se le entregue la cantidad de $500 como condición previa al lanzamiento.

Considerando que la súplica del demandado apelante es compatible con la decisión en el caso de *Arzuaga* v. *Ramírez*, supra, y que es aceptable porque con ella se pone fin a la controversia entre las partes, se modifica la sentencia apelada en el sentido de reconocer que el demandado apelante tiene un derecho de hogar seguro sobre la casa que él y su familia ocupan en la finca de los demandantes, y decretando el desahucio solicitado previo pago por los demandantes al demandado de la suma de quinientos dólares, en satisfacción y pago de su derecho de *homestead*. *Y así modificada se confirma la sentencia apelada*.

El Juez Asociado Señor Wolf está conforme con la sentencia.

El Juez Presidente señor del Toro no intervino.