Virginia Valentina Martínez Mató, conocida por Carolina Martínez Mató, recurrente, *v.* El Registrador de la Propiedad de San Germán, recurrido.

Núm. 1025.—*Sometido:* Julio 12, 1938. *Resuelto:* Julio 26, 1938.

*Oscar Souffront,* abogado de la recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Por escritura número 83, de 6 de mayo de 1938, ante el notario don Oscar Souffront, doña Teresa Mató y Avellanet viuda de Martínez, en garantía de la cantidad de $11,242.44 y de dos créditos adicionales de $500 cada uno para intereses en caso de mora y para costas y honorarios de abogado en caso de reclamación judicial respectivamente, constituyó hipoteca sobre una finca rústica de su propiedad a favor de su acreedora doña Virginia Valentina Martínez y Mató.

Bajo el párrafo cuarto de dicha escritura se halla la cláusula marcada con la letra *G,* que literalmente dice·así:

"(G) La hipoteca aquí constituída se hace extensiva asimismo al derecho del Hogar Seguro (*Homestead*) que pudiera tener y corresponderle a la deudora hipotecaria y sus sucesores o cesionarios en derecho en la finca hipotecada, quedando especialmente hipotecado en garantía del préstamo antes relacionado dicho derecho de Hogar Seguro."

Presentada la escritura para su inscripción en el Registro de la Propiedad de San Germán, en cuya demarcación radica la finca hipotecada, el Registrador la denegó en cuanto hace

extensiva la hipoteca al derecho de *homestead,* expresando los motivos legales que tuvo para tal denegación en una nota que dice así:

"Inscrito el documento que precede, al folio 198vto. del tomo 21 del Ayuntamiento de Maricao, finca Núm. 217 cuadruplicado e inscripción 16a; denegándose en cuanto a la extensión de la hipoteca al derecho de *homestead,* porque según expresa la cláusula *G* de la escritura, la hipoteca se hace extensiva al derecho de Hogar Seguro que pudiera tener y corresponderle a la deudora, sus sucesores o cesionarios en la finca, no pudiendo ser admitida tal extensión a ese derecho porque para ello sería necesario que la deudora fuera dueña de un derecho de hogar seguro que al presente no tiene según expresa dicha cláusula, ya que en el Registro se inscriben los bienes inmuebles o derechos reales cuando tales existen y no en forma hipotética, en el momento de hacer un contrato o transacción. D.P.R. pág. 502, Panfleto Núm. 4 del tomo 51. Tomándose anotación preventiva por el término legal a favor de la acreedora de su derecho."

No conforme la acreedora con la nota del registrador recurrió a este tribunal interesando que se revoque la nota y se ordene que se inscriba la hipoteca, haciéndola extensiva al derecho de *homestead.*

Tanto la recurrente como el registrador en los alegatos que presentaron invocan en su auxilio el caso de *Franceschi* v. *Claudio Elena,* 51 D.P.R. 495, y la recurrente invoca además el de *Rodríguez* v. *Registrador,* 51 D.P.R. 372.

En el primero de dichos casos y en la página 501, se dijo:

"La 'Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa', aprobada en 12 de marzo de 1903 (Comp. 1000 *et seq.*), vigente en la fecha en que los demandantes adquirieron la finca por compra a Ortiz Perichi, es la ley aplicable para fijar los derechos de las partes litigantes. Dicha ley provee:

" 'Artículo 3.—Que no será válida ninguna renuncia o traspaso de una finca así exentada a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, su esposo o esposa, si él o ella lo tuvieren, o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso, o sin la orden de la corte de distrito disponiendo el traspaso del título de la propiedad, siempre que la exención se haga extensiva a un hijo o hijos.' "

Para disipar cualquier duda que pudiera existir sobre la correcta interpretación del artículo 3 antes transcrito, vuelve a decir el tribunal:

"Debemos hacer constar, para evitar que se pueda dar al referido *dictum* mayor alcance que el que tuvimos en mente, que lo que quisimos decir fué que el dueño de un derecho de hogar seguro puede venderlo, permutarlo o gravarlo, siempre que lo haga constar expresamente en la escritura o instrumento correspondiente; y que el derecho de *homestead* se trasmite también al comprador de un inmueble, cuando el vendedor por los términos del contrato vende, cede y traspasa todo su título e interés sobre el inmueble y entrega la posesión física del mismo al comprador, sin hacer expresa reserva de su derecho de hogar seguro."

Si la ley vigente en la fecha en que se celebró el contrato de hipoteca hubiera sido la "Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa," aprobada en 12 de marzo de 1903, por la autoridad del caso de *Franceschi* v. *Claudio Elena,* supra, no hubiésemos vacilado en revocar la nota del registrador y ordenar la inscripción según lo solicita la recurrente. Pero la ley vigente en la actualidad y en la fecha en que se celebró el contrato es otra. La ley citada de 1903 ha sido expresamente derogada por la número 87, aprobada el 13 de mayo de 1936 (Leyes de ese año, pág. 461), titulada "Ley para establecer el derecho de hogar seguro (*homestead*), exentarlo de una venta forzosa, etc.", cuya sección 8 literalmente dice:

"Sección 8. Por la presente, se deroga en todas sus partes la ley titulada 'Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa', aprobada el 12 de marzo de 1903."

El artículo 3 de la Ley de *homestead* de 1903 antes transcrito permitía la renuncia de ese derecho siempre que se hiciese de manera expresa en la escritura de traspaso (*conveyance*) otorgada por el jefe de familia.

No obstante hallarse la ley en nuestros estatutos desde el año 1903, permanecía prácticamente ignorada tanto por el público como por el foro. No fué hasta el año 1926 que

este tribunal, en la opinión emitida en el importante caso de *Dávila* v. *Sotomayor,* 35 D.P.R. 794, la sacó de la oscuridad en que hasta entonces se hallaba y la puso de manifiesto ante la profesión y el público en general. Con sobrada razón dijo el Juez Presidente Sr. del Toro en la página 798 de la opinión:

"Desde el 20 de marzo de 1903 la Asamblea Legislativa de Puerto Rico decretó la 'Ley para definir el *Homestead* (hogar seguro) y para exentarlo de una venta forzosa' y muy pocas veces se han suscitado cuestiones en relación con la misma. Parece que el pueblo durante tantos años no se ha dado cuenta de la existencia de la ley. No ha sido ése el caso en los estados y territorios de la Unión donde el estatuto, en forma igual, semejante o diferente, de antiguo existe y donde se han dictado miles de decisiones por los tribunales de justicia ora explicando el espíritu y el alcance de sus preceptos, ya aclarando y resolviendo los múltiples problemas que su aplicación ha suscitado."

Advertidos así de la existencia y alcance de la ley, no tardaron los prestamistas y acreedores en buscar un medio de evadirla y desde entonces las escrituras de hipoteca contenían una cláusula en la que el deudor renunciaba al derecho de *homestead* que pudiera tener sobre el inmueble gravado, de este modo frustrando el propósito del legislador de no dejar desamparados a los familiares del deudor cuyos bienes eran ejecutados. Consciente de esta situación, en 1936 vuelve el legislador a atacar el mal y aprueba entonces la vigente ley de *homestead,* de la que elimina por completo la posibilidad de renunciar a ese derecho. Llevando a cabo su propósito deroga en 1936 la ley de 1903, y en la sección 1 de la vigente ley, en lenguaje que no admite dudas, dispone:

"*Este derecho de homestead es irrenunciable; y cualquier pacto en contrario se declara nulo.*" (Itálicas nuestras.)

Por si tan terminante precepto no fuese lo suficientemente explícito, repite el legislador en las secciones 5 y 6 de la misma ley:

"Sección 5.—No se hará venta alguna por virtud de sentencia o ejecución de ninguna finca urbana o rústica cuando se reclamare u

ocupare la misma como hogar seguro (*homestead*), inscrita o no en el registro de la propiedad, a menos que se obtenga por ella una suma mayor de quinientos (500) dólares.

"

"Sección 6.—En caso de no formularse reclamación alguna ante el oficial encargado de verificar la subasta, la persona con derecho a la reclamación de *homestead* podrá dentro del término de sesenta (60) días, contados desde la fecha en que la subasta se celebró, entablar acción ordinaria correspondiente."

El contrato de hipoteca implica necesariamente el derecho de ejecución y venta de la cosa hipotecada para hacer efectiva la garantía. Siendo ello así, declarando la sección 1 de la ley que el derecho de *homestead* es irrenunciable y que cualquier pacto en contrario es nulo y la sección 5 que no se hará venta alguna por virtud de sentencia o ejecución de ninguna finca urbana o rústica cuando se reclamare u ocupare la misma como hogar seguro....a menos que se obtenga por ella una suma mayor de quinientos (500) dólares, claro es que cualquier hipoteca que intente extenderse al derecho de *homestead* es contraria a la ley en tanto en cuanto a ese derecho respecta. Y si es contrario a la ley el contrato en lo que al *homestead* respecta, es nulo por el precepto expreso del artículo 1207 del Código Civil (edición de 1930) que dice así:

"Art. 1207. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente *siempre que no sean contrarios a las leyes,* a la moral y al orden público."

El caso de *Rodríguez* v. *El Registrador,* 51 D.P.R. 372, citado por la recurrente, no es de aplicación al que nos ocupa. Allí se trataba de la venta privada de un inmueble. Esta corte, por su Juez Asociado Sr. Wolf, dijo:

"Cuando una persona tiene el dominio absoluto de una propiedad y la vende, teniendo con ello la intención de enajenar o de disponer de su título e interés completos, el derecho de hogar seguro necesariamente se amalgama (*merges*) en el derecho mayor de dominio. *In praesentia majoris cessat potentia minoris.*"

El caso de *Rodríguez* v. *Registrador,* supra, está en perfecta armonía con la ley. Allí no se trataba de vender el derecho de *homestead* independientemente de los demás derechos dominicales que sobre el inmueble tenía el vendedor, y como muy bien dijo la corte en el párrafo final de la opinión, una interpretación distinta, cuando toda la propiedad valga más de $500, pondría un obstáculo a la libre enajenación y podría, en su consecuencia, dar lugar a una cuestión constitucional.

Siendo como es nula la cláusula de la escritura número 83 antes citada, por la cual se intenta hacer extensiva la hipoteca al derecho de *homestead* que sobre la finca hipotecada pudieren tener la deudora o sus sucesores en interés, *procede confirmar la nota recurrida.*