VIRGINIA VALENTINA MARTÍNEZ Y MATÓ, conocida por CAROLINA MARTÍNEZ Y MATÓ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

Núm. 1025.—*Resuelto:* Diciembre 20, 1938.

*Oscar Souffront,* abogado de la recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

EN MOCION DE RECONSIDERACION

■■ La recurrente solicita que reconsideremos nuestra resolución de 26 de julio último (53 D.P.R. 622), en la que se sostiene que el pacto de hacer extensiva una hipoteca al derecho de *homestead* que sobre la finca hipotecada pueda tener la deudora o sus sucesores en interés, es nulo por ser contrario a la ley de hogar seguro vigente (Ley núm. 87, de 13 de mayo de 1936, pág. 461).

La moción está basada principalmente en un *dictum* que aparece en el caso de *Franceschi* v. *Claudio Elena*, 51 D.P.R. 495, 502, que tratando de aclarar la decisión en el de *Rodríguez* v. *Registrador*, 51 D.P.R. 372, dice así:

"Debemos hacer constar, para evitar que se pueda dar al referido *dictum* mayor alcance que el que tuvimos en mente, que lo que quisimos decir fué que el dueño de un derecho de hogar seguro puede venderlo, permutarlo o gravarlo, siempre que lo haga constar expresamente en la escritura o instrumento correspondiente; y que el derecho de *homestead* se transmite también al comprador de un inmueble, cuando el vendedor por los términos del contrato vende, cede y traspasa todo su título e interés sobre el inmueble y entrega la posesión física del mismo al comprador, sin hacer expresa reserva de su derecho de hogar seguro."

Sostiene también la recurrente que al amparo de lo resuelto en el caso de *Franceschi* v. *Claudio Elena* el 7 de mayo de 1937, se han otorgado un gran número de contratos de hipoteca sobre propiedades cuyo valor apenas excede de $500, en que los deudores tienen un posible derecho de hogar seguro que hipotecaron expresamente, y cuyas hipotecas aceptaron los acreedores al amparo de la ameritada decisión.

En primer término diremos una vez más que el caso de *Franceschi* v. *Claudio Elena* interpreta la Ley de *homestead* aprobada el 12 de marzo de 1903 (Comp., secciones 1000 *et seq.*), ley que fué derogada por la que rige en la actualidad y regía cuando se celebró el contrato de hipoteca que motiva el recurso gubernativo que nos ocupa. La ley que se aplicó en el caso de *Franceschi* v. *Claudio Elena* permitía la renun-

cia al derecho de *homestead* siempre que ésta se consignase expresamente en la escritura de enajenación, mientras que la que ahora impera, por el contrario, declara que "el derecho de *homestead es irrenunciable y cualquier pacto en contrario se declara nulo.*" (Sección 1, Ley núm. 87 de 1936, pág. 461).

En segundo término, la cuestión envuelta en el caso de *Rodríguez* v. *Registrador,* supra, fué la validez de una cláusula de una escritura de compraventa en la que el vendedor, con el expreso consentimiento de su esposa, enajenó cierta finca de la sociedad de gananciales, con todos sus usos, etc., "incluyendo en esta venta el derecho de hogar seguro que tengan o puedan tener los esposos . . . a fin de que pueda disfrutar de ella como única y legítima dueña." Y este tribunal, sosteniendo la validez de dicha cláusula, se expresó así:

"La cuestión a decidir en este recurso gubernativo es si una venta de propiedad inmueble en que se hace constar que el derecho de hogar seguro está incluído en el precio de la compraventa constituye un pacto contrario a la disposición legal arriba copiada. A nuestro juicio no lo constituye.

"El hecho de que el hogar seguro sea irrenunciable no significa que una vez creado y en existencia, no pueda, cuando sea en beneficio de la persona poseedora de tal derecho, ser vendido, permutado o estar sujeto a otros posibles incidentes del dominio.

"Cuando una persona tiene el dominio absoluto de una propiedad y la vende, teniendo con ello la intención de enajenar o de disponer de su título e interés completos, el derecho de hogar seguro necesariamente se amalgama (*merges*) en el derecho mayor de dominio. *In praesentia majoris cessat potentia minoris.*"

Ése fué el *ratio decidendi* del caso de *Rodríguez* v. *Registrador,* y el *obiter dictum* que aparece en el de *Franceschi* v. *Claudio Elena,* supra, no sienta jurisprudencia, debiendo recibirse con la consiguiente reserva tanto por los tribunales como por la profesión y el público en general.

La recurrente no impugna el *ratio decidendi* de *Rodríguez* v. *Registrador*. Por el contrario, se sirve del mismo para

argumentar que si el dueño de un inmueble sujeto a derecho de hogar seguro puede voluntariamente venderlo, y la enajenación y entrega del mismo transmite el derecho de hogar seguro a menos que se haga expresa reserva de dicho derecho, con tanta más razón puede el mismo dueño hipotecarlo, gravando expresamente, como en este caso, el derecho de *homestead*, porque lo más incluye lo menos.

El argumento a primera vista parece decisivo, pero cae por su peso una vez que se analiza a la luz del saludable propósito que inspira a la ley, cual es asegurar un hogar al deudor para él y su familia.

Con razón se dice que la Ley Hipotecaria es ley de tercero, y con igual propiedad podría decirse que la de *homestead* es ley de protección contra acreedores. Esta tendencia de la ley a proteger la familia contra sus acreedores no data de los tiempos modernos, encontrándose preceptos en la Ley Mosáica que tendían a ese fin. Howe, en su obra titulada "Estudios de Derecho Civil", segunda edición, página 27, a este respecto dice:

"El contrato de prenda también hace su aparición en los tiempos más remotos, anticipándose considerablemente a lo que llamaríamos una hipoteca. La Ley Mosáica, reconociendo la práctica que ya existía, de usar el contrato de prenda para garantizar deudas, prohibía que se diera en prenda el molino de piedra de que se valía la familia para moler sus alimentos; exactamente al igual que se declaran exentas de ejecución por deuda las herramientas de un artesano o como la exención que antiguamente existía en Inglaterra a favor de los implementos y útiles agrícolas (*wainage*) de un labrador."

Para las exenciones que la ley concede en Puerto Rico, véase el artículo 249 del Código de Enjuiciamiento Civil.

Es por esa razón que la ley no regula, ni menciona siquiera, las ventas que voluntariamente pueden hacer los propietarios, dirigiendo su atención exclusivamente a dictar reglas para proteger el derecho de *homestead* en las ventas pro-

movidas por los acreedores por virtud de sentencia o ejecución, en relación con las cuales prescribe:

"Sección 5. No se hará venta alguna por virtud de sentencia o ejecución de ninguna finca urbana o rústica cuando se reclamare u ocupare la misma como hogar seguro (*homestead*), inscrita o no en el registro de la propiedad, a menos que se obtenga por ella una suma mayor de quinientos (500) dólares.

"    .    .    .    .    .    .    .    .    .    .

"Sección 6. En caso de no formularse reclamación alguna ante el oficial encargado de verificar la subasta, la persona con derecho a la reclamación de *homestead* podrá dentro del término de sesenta (60) días contados, desde la fecha en que la subasta se celebró, entablar acción ordinaria correspondiente."

Vamos a transcribir, por estimarlos pertinentes, los siguientes párrafos del caso de *Brame and Wife* v. *Craig,* 12 Bush (75 Ky.) 404, citados con aprobación en el de *Brannon* v. *Bohannon,* 96 S. W. (2d) 1036, 1038, que dicen así:

"La exención del derecho de hogar seguro no constituye un derecho real sobre el inmueble, sino un privilegio que contra sus acreedores disfruta el que lo ocupa como jefe de familia; y aunque el hogar seguro no está sujeto a una venta coercitiva por un acreedor, sin embargo la enajenación o traspaso que del inmueble afecto al hogar seguro haga su propietario, no está prohibida por el estatuto."

"Somos de opinión que la Ley de Hogar Seguro (*homestead*) asegura para el deudor la propiedad exentada, protegiéndola de las garras de sus acreedores, sin impedirle a él vender la propiedad afecta al *homestead* y por consiguiente una enajenación así hecha, en que medie precio o consideración, transmite al comprador *todo el interés* que sobre el inmueble tenía el vendedor." (Bastardillas nuestras.)

Sin embargo, no puede decirse lo mismo sobre el derecho del propietario a gravar con hipoteca o en cualquier otra forma su derecho de *homestead,* pues como sostenemos en la opinión anteriormente emitida (53 D.P.R. 622, 626):

"El contrato de hipoteca implica necesariamente el derecho de ejecución y venta de la cosa hipotecada para hacer efectiva la garantía. Siendo ello así, declarando la sección 1 de la ley que el

derecho de *homestead* es irrenunciable y que cualquier pacto en contrario es nulo y la sección 5 que no se hará venta alguna por virtud de sentencia o ejecución de ninguna finca urbana o rústica cuando se reclamare u ocupare la misma como hogar seguro . . . a menos que se obtenga por ella una suma mayor de quinientos (500) dólares, claro es que cualquier hipoteca que intente extenderse al derecho de *homestead* es contraria a la ley en tanto en cuanto a ese derecho respecta. Y si es contrario a la ley el contrato en lo que al *homestead* respecta, es nulo por el precepto expreso del artículo 1207 del Código Civil (edición de 1930) que dice así:

" 'Art. 1207. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente *siempre que no sean contrarios a las leyes,* a la moral y al orden público.' "

¿Y qué beneficio práctico alcanzaría el acreedor, preguntamos ahora, con obtener una hipoteca sobre el derecho de *homestead,* si luego, al incumplir su contrato el deudor y tratar el acreedor de hacer valer su derecho de hipoteca mediante ejecución, se tropieza con la infranqueable barrera que le opone la sección 5 de la Ley de *Homestead,* que le dice que no se hará venta alguna por virtud de sentencia o ejecución de ninguna finca urbana o rústica cuando se reclamare u ocupare la misma como hogar seguro, inscrita o no en el registro de la propiedad, a menos que se obtenga por ella una suma mayor de $500, cantidad ésta que la ley reserva al deudor?

Podría argüirse por el recurrente que de acuerdo con los razonamientos expuestos en esta opinión, una finca cuyo valor fuese $500 no podría ser hipotecada. Aparentemente parece tener razón el recurrente, pero el argumento es insostenible cuando se considera que el valor de una propiedad, cualquiera que sea su clase, es un factor variable de acuerdo con las circunstancias existentes en la fecha en que la cosa trate de venderse. Por ejemplo, una finca que hoy valga $500, en el transcurso de una semana o quizá de veinticuatro horas su valor puede quintuplicarse, pudiendo suceder esto mediante el establecimiento de una factoría frente a ella, la apertura de una calle que aumente su valor, o cualquier otra

circunstancia semejante. En igual forma puede reducirse considerablemente el valor de una finca y por esta razón no puede de antemano determinarse de manera concluyente cuál ha de ser el valor de ella en una fecha cierta. Nada hay que impida a un propietario cuyo inmueble tenga un valor de $500 constituir una hipoteca siempre que la misma no la haga extensiva expresamente al derecho de *homestead*. Si al tiempo de ejecutarse la hipoteca la finca excede de $500, el exceso se aplicará al pago del crédito. Si en esa misma fecha su valor no ha excedido de $500, entonces nada puede obtener el acreedor si esta finca está sujeta al derecho de *homestead*. En otras palabras, el acreedor que presta dinero con garantía de una finca cuyo valor al tiempo de constituirse la hipoteca no excede de $500, asume el riesgo de que en la fecha de ejecución no pueda hacer efectiva la garantía.

Podría también argüirse que como es potestativo en el deudor reclamar el derecho de *homestead,* mientras no lo reclame la obligación será válida y desde luego el acreedor podrá hacer efectiva su hipoteca, y por consiguiente no debe impedirse al propietario hipotecar su *homestead*.

Tal proposición es completamente insostenible en Derecho, puesto que estaría constituyéndose en esa forma una obligación condicional cuyo cumplimiento dependería exclusivamente de la voluntad del· deudor, situación legal que no sanciona el artículo 1068 del Código Civil, edición de 1930, que prescribe que ''cuando el cumplimiento de la condición dependa de la exclusiva voluntad del deudor, la obligación condicional será nula.'' Si se inscribiese una hipoteca de esta naturaleza, se estaría inscribiendo una obligación nula.

Antes de terminar deseamos consignar que en el *dictum* del caso de *Franceschi* v. *Claudio Elena* que se transcribe al principio de esta opinión, equivocadamente se agregó la palabra ''gravarlo'' después de las palabras ''venderlo'' y ''permutarlo''. El caso de *Rodríguez* v. *Registrador* en manera alguna hace referencia al derecho de hipotecar o

gravar el derecho de *homestead,* sino al de enajenar en venta privada el inmueble afecto al *homestead.*

*Por las razones expuestas, no ha lugar a la reconsideración solicitada.*

El Juez Presidente Sr. Del Toro no intervino.